S. AUGUSTUS ALLEN, administrator, *vs.* EMBURY P. CLARK.

Hampden.    September 26, 1905. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Husband and Wife.    Attachment.    Statute,* Construction.

If a married woman carries on a farm purchased with her own money, her husband living with her on the farm and acting as her agent, but no certificate for her to do business as a married woman is filed under the provisions of R. L. c. 153,

§ 10, the personal property of the wife which was employed in the business of carrying on the farm during her lifetime cannot be attached after her death as the property of her husband.

A statute which provides a civil liability for a failure to comply with its requirements partakes of the nature of a penal statute and should be construed strictly.

TORT by the administrator of the estate of Losetta O. Hunt, late of Westfield, against the sheriff of the county of Hampden for the alleged conversion by one King, a deputy of the defendant, of certain personal property belonging to the estate of the intestate.     Writ dated May 15, 1903.

At the trial in the Superior Court before *De Courcy*, J. it appeared that the plaintiff's intestate died on March 16, 1903, leaving a husband and a son, and that the property in question was attached by King, on April 9, 1903, upon various writs against Alfred S. Hunt, the husband; that the intestate on May 9, 1901, had purchased the farm with her own money and that she and her husband had lived on it since that time up to the time of her death; that the personal property attached belonged to the intestate and during her lifetime had been employed in carrying on the farm, the business being done mostly in the name of the husband; and that no certificate for the intestate to do business as a married woman ever was recorded under R. L. c. 153, § 10.     The plaintiff introduced evidence tending to show that the management, control and carrying on of the farm were solely in the charge of the intestate, and that such acts as her husband did about the carrying on of the farm were solely as her agent.

The judge ruled that this personal property of the plaintiff's intestate was not liable to be attached after her death as the property of her husband or to be taken on execution against him in the actions brought after his wife's death.     He found for the plaintiff in the sum of $699, and reported the case for determination by this court.

If the ruling was correct, judgment was to be entered on the finding.     If the husband's creditors had a legal right to attach the personal property of the wife after her decease and sell it on executions against him, the finding was to be set aside, and judgment was to be entered for the defendant.

The case was argued at the bar in September, 1905, before

*Knowlton*, C. J., *Lathrop*, *Hammond*, *Loring*, & *Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*A. S. Kneil*, for the plaintiff.

*F. A. Ballou*, for the defendant.

HAMMOND, J. This is an action of tort in the nature of trover, tried in the Superior Court without a jury and sent here by report. It appears that one Losetta O. Hunt, a married woman, at the time of her death was, and for some time before had been, engaged in carrying on the business of farming upon her own land with personal property belonging to her, but without having recorded a married woman's certificate in accordance with the provisions of R. L. c. 153, § 10. She died on March 16, 1903, and on April 7, 1903, the plaintiff was appointed administrator of her estate. On April 9, 1903, one of the defendant's deputies attached the personal property on a writ brought against the husband to collect a debt owed by him.

The case raises the question whether the personal property could be reached by the husband's creditors under R. L. c. 153, § 10. This section provides that, where a married woman is doing business on her own account, a certain certificate shall be caused to be recorded by her or by her husband, and further that if such a certificate is not so recorded by either husband or wife, " the personal property employed in such business shall be liable to be attached as the property of the husband and to be taken on execution against him, and the husband shall be liable upon all contracts lawfully made in the prosecution of such business in the same manner and to the same extent as if such contracts had been made by himself."

The contention of the defendant is in substance that the personal property of a married woman once employed by her in the uncertificated business is liable for the husband's debts so long as it is owned by her, irrespective of the question whether at the time of the seizure by the husband's creditors it be then thus employed, or, in a word, that having once employed the property in her uncertificated business she is forever thereafterwards estopped from setting up her title as against her husband's creditors ; and that in this respect the administrator of her estate stands in no better position than she does.

The kind of legislation of which this section is the outcome

was begun by St. 1862, c. 198. The common law rights of a married woman as to her own separate property and her power to contract, had been considerably modified. At the time of the passage of this statute a married woman might carry on business on her own separate account, and her separate property was not liable for the debts of her husband. Under this state of the law it sometimes, perhaps frequently, happened that a business was being carried on apparently by the husband and yet, when his creditor (whether the debt was contracted by the husband in his apparent business or otherwise) undertook to collect the debt by an attachment of the property used in the business, he was confronted with the claim on the part of the wife that the business was really carried on by her and not by her husband; and, inasmuch as her separate property could not be taken for his debts, the attachment would not stand. Doubtless in many cases this claim of the wife was fraudulent, but the relation between husband and wife is such that detection of the fraud was difficult.

Under these circumstances St. 1862, c. 198, was passed. Its purpose was to prevent this kind of fraud, or at least to render it ineffective. It provided that a certificate might be filed by the wife, and that in case no such certificate should be filed by her she should "not be allowed to claim any property employed in said business as against any creditors of her husband, but the same may be attached on mesne process by any such creditor, or taken upon execution, against the husband of said woman." If now we look simply to the state of the law and the evil to be cured, the most natural and easy reading of the statute would seem to be that the time when the wife shall not be allowed to claim the property is the time when it is taken either by attachment or execution, and that as a necessary implication, the time it is employed in the wife's business must be the same time. Or, in other words, the wife shall not be allowed to claim the property if at the time it is seized by the husband's creditors it be employed in the business.

And this interpretation grows more natural the more the nature and purpose of the statute is considered. In the first place, the statute is in derogation of the theretofore existing rights of the parties in a very important particular. It makes the property of one person liable for the debts of another. While a

statute making so important a change should have a reasonable construction, it is to be borne in mind that this statute, while not penal in the strict technical sense of the word, still, providing as it does a civil liability for failure to comply with its requirements, is penal in its nature, and should be construed with corresponding strictness. In the next place, no lien is expressly created by the statute. This is one of its leading features. If the Legislature had intended to create a lien upon the wife's property in favor of the husband's creditors, which should last so long as the property was owned by the wife, or until attached by her creditors, or for any other time, it easily could have done so by clear language.

Moreover, the results likely to follow from the interpretation for which the defendant contends are such that it cannot be supposed they were intended unless such intent be clearly expressed. One or two illustrations will serve to indicate their nature. A wife carries on the livery business, in which she employs ten horses which she lets to customers. She desires to take one of them out of the business and to devote it exclusively to the use of herself or her daughter as a saddle horse. Acting in good faith she does this. One year afterward, the horse, while being so used, is attached for the husband's debt. Can any one think that the statute intended such a result? Again, suppose the wife is carrying on a grocery and takes a barrel of flour home for the use of the family, or that she is engaged in the sale of jewelry and in good faith takes from her stock a diamond ring, intending no longer to employ it in the business but to use it exclusively for her own personal ornament, is it the intention of the statute that the flour or the ring shall be liable for the husband's debts? Upon the defendant's interpretation the property of a married woman who has ever carried on business without recording the required certificate is divided into two parts, first, that which at some time has been employed in that business, and second, that which has not been so employed; and during the rest of her life (and even after her death so long as it remains in the hands of her executor or administrator), the property of the first kind, although long ago drawn from the business, and although the business long ago ceased, is to be held answerable for the debts of the husband; and that is so even if the debt

be contracted by the husband long after the cessation of the business.

Nor can the fact that the liability of the husband under the second section of the statute continues after the business has ceased, have any bearing. Even upon the defendant's theory, the liability of the wife's property for his debts is not coextensive in time with that of the husband for the debts of the business. Upon an analysis of the statute these things appear: First, that if the wife files a certificate, her property is not liable for the husband's debts: Second, if she does not file a certificate, the property used in the business is liable for his debts, and that is so whether or not the debt have any relation to the business: Third, in the absence of a certificate by the wife, the husband may file a certificate, in which case, although the property of the wife used in the business is still liable for his debts, he is not liable for the debts of the business: Fourth, if neither files a certificate then he is liable.

It thus appears that the liability on the part of the wife is not personal, while that of the husband is; that the liability of the wife's property is for any debt of the husband whether or not contracted in carrying on the business, while the liability of the husband is only for the business debts; that the liability on the part of the wife's property, even upon the defendant's theory, ceases when the title to the property passes from her, while the liability of the husband continues during his life and remains against his estate in the hands of his personal representatives as his own debt; and lastly, the liability of the wife under the first section may exist although the husband by filing a certificate may escape liability (at least for debts thereafter contracted in the business) under the second section. Neither in nature nor duration are those liabilities identical or even similar, and under certain circumstances one may exist without the other. It is manifest that the nature or duration of one can furnish no analogy as to the nature and duration of the other.

If it be said that the general intent of the Legislature was that this kind of the wife's property should be held to pay the husband's debts, and that the interpretation for which the defendant contends carries out that intention, the answer is that such an assumption of the legislative intent is simply a begging of the

question. The question before us is, What was the intention of the Legislature?

It seems plain that the statute was dealing with a state of things existing at the time the husband's creditors laid hold of the property. If at that time the wife had filed no certificate and the property seized was employed in the business, then the creditor could hold it, otherwise not. So far the Legislature intended to go, and, for reasons hereinbefore stated, it seems plain that it intended to go no farther. Such an interpretation of the statute is suggested by the obvious, syntactical connection of the words, by its penal nature, and by a view of the evil it was intended to reach. Moreover, it gives a plain, easily understood rule for its administration, and avoids the results and practical difficulties liable to occur under the interpretation contended for by the defendant.

Notwithstanding some changes in phraseology, we think that, so far as it is material to the question before us, R. L. c. 153, does not differ in legal meaning from St. 1862, c. 198. See St. 1881, c. 64 ; Pub. Sts. c. 147 ; St. 1898, c. 416.

In the case before us the business of the wife was terminated by her death. There is no evidence that the administrator was carrying on the business for her estate, and the presumption is that he was not. In the opinion of a majority of the court, the ruling of the trial court that under these circumstances the personal property of the plaintiff's intestate was not liable to be attached after her death as the property of the husband and to be taken on execution against him in actions brought after death, was correct.

*Judgment on the verdict.*