JOHN MORRIN *vs.* CHARLES F. MANNING.

Middlesex.    January 12, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Trespass, 'Ab initio.    Trover.    Conversion.    Evidence,* Memorandum.    *Witness,*
Cross-examination.    *Practice, Civil,* Conduct of trial, Requests and rulings, Verdict.

At the trial of an action of tort with a declaration containing three counts, the first for the conversion of the furniture and provisions in a restaurant, the second for the conversion of " divers bank notes and coins to the value of $35," and the third for trespass in wrongfully excluding the plaintiff from his restaurant, there was evidence tending to show that the defendant, who was a constable, entered the plaintiff's restaurant to make an attachment under a writ and placed a keeper in charge, and that then, the plaintiff desiring to continue the business, it was arranged that the business should not be interrupted, but that the money taken in should be paid to the defendant ; that, when the usual time for closing the store at night arrived, the defendant told the plaintiff that he would have to lock up the store himself unless the plaintiff was willing to surrender to him possession thereof and to give to him the keys; that the plaintiff thereupon gave the keys to the defendant; that at the usual opening time the next morning the defendant opened the store and left his keeper in charge ; that during the day, because the defendant insisted that the waitresses pay to him money which they received, they all departed and the restaurant was left in the sole charge of the defendant; that at closing time the defendant, still retaining possession of the plaintiff's keys, against the objection of the plaintiff fastened the door with a padlock and staple and put a sign upon it, saying, " Closed.   M., constable "; that the premises remained in that condition until, five days later, the plaintiff gave a bond dissolving the attachment, whereupon the defendant returned to the plaintiff the keys of the store, but did not return

$27 which he had taken possession of. *Held,* that upon the evidence the jury properly might have found that the plaintiff surrendered the premises to the defendant only upon condition that the restaurant should be kept open during business hours, and therefore that the defendant properly might have been found to have been a trespasser *ab initio* and to be liable under all of the counts of the declaration.

An action of tort in the nature of trover will lie for the conversion of money.

A request for a ruling properly may be refused by the judge presiding at a trial if it singles out only one of several circumstances bearing upon a certain issue and asks for a ruling as to its effect apart from the other circumstances in evidence on the same issue.

At the trial of an action of tort where evidence as to the nature and extent of the plaintiff's business was admissible as bearing upon the question of damages that might be recovered for the alleged tort of the defendant, the plaintiff produced no books of account, but testified as to his business from certain memoranda in pencil, which he had drawn up on the morning of the trial with the assistance of his counsel. The counsel for the defendant took from the plaintiff the memoranda and cross-examined him with regard to them. On redirect examination of the plaintiff, the plaintiff's counsel offered the memoranda in evidence and they were admitted subject to an exception by the defendant. *Held,* that it could not be said that the presiding judge acted improperly, since he might well have thought that the memoranda would help the jury to understand the cross-examination better.

The declaration in an action of tort contained three counts, one for the conversion of the furniture and provisions in a restaurant, the second for the conversion of " divers bank notes and coins to the value of $35," and the third for trespass in wrongfully excluding the plaintiff from the restaurant. At the trial it appeared that the money described in the second count was in the restaurant and that it and the furniture and provisions described in the first count were seized by the defendant under circumstances which could have been found to have made him liable as a trespasser *ab initio,* so that there was evidence which warranted a verdict for the plaintiff on each of the counts. The presiding judge was not asked to instruct the jury to find a verdict as to each count and did not do so. The jury returned a general verdict for the plaintiff. The defendant moved for a new trial on the ground that the jury should have been ordered to find separately as to each count. The motion was overruled. *Held,* that the motion properly was overruled, because, if the defendant wished that separate verdicts should be returned, he should have asked for an instruction to that effect, and also because as respected the question of damages the three counts of the declaration were closely connected with each other and described acts substantially forming parts of one transaction, so that the presiding judge well might have thought that it was best that damages should be assessed in one general sum.

TORT, with a declaration in three counts, the first count being for the conversion of "divers articles of restaurant furniture and property contained in the plaintiff's restaurant," the second for the conversion of "divers bank notes and coins to the value of thirty-five dollars, current as money in this Commonwealth"; and the third alleging that the defendant took possession of the plaintiff's restaurant, "seized all the furnishings, food and per-

sonal property therein, and continued to hold them in his possession for several days, and afterwards put out the plaintiff, his servants and agents, put a lock and staple on the door and locked up the door and restaurant, thereby depriving the plaintiff of the access, use, occupation and enjoyment of the premises and of the property therein contained." Writ dated October 15, 1907.

The case was tried before *Hitchcock*, J.

It appeared that the plaintiff kept a small restaurant at No. 6 Brattle Street in Cambridge, and that the defendant was a constable of that city, and that on October 6, 1907, in his official capacity as constable the defendant made an attachment of the plaintiff's goods in the restaurant on a writ against the plaintiff and returnable to the Third District Court of Eastern Middlesex; that at about noontime on the day of the attachment the defendant, " as appears by his return upon said writ, attached certain property of the plaintiff, and placed a keeper over the same ; that the said property consisted of about a dozen small tables, seating three or four people each, a few dozen chairs, a cash register, seven dollars and twenty-one cents in money, and some food in the kitchen." The defendant testified that the plaintiff desired to continue with the business, that the business was continued, and that the money derived therefrom was paid to the defendant; that the plaintiff desired money to pay for certain incidentals and that the defendant, with the consent of the attorney for the plaintiff in the writ under which the attachment was made and at the request of the plaintiff in this action, paid these sums out of the money taken in.

The keeper remained until closing time, between seven and eight o'clock in the evening. Before the store closed, the defendant called at the store and remained until it was closed. At closing time the defendant told the plaintiff that he would be obliged to retain possession of the goods attached and would have to lock up the store himself unless the plaintiff was willing to surrender possession of the store and give him the keys. The keys of the store were thereupon given by the plaintiff to the defendant, the defendant locked up the store and then asked the plaintiff at what hour he opened in the morning. The plaintiff replied at six o'clock. It appeared that the defendant was at the plaintiff's store before six o'clock in the morning and opened it in order for

the plaintiff to go in and that the defendant kept possession of the keys and waited there until the keeper arrived, sometime about eight o'clock in the morning. The restaurant was usually kept open from six o'clock in the morning until eight o'clock at night.

After the arrival of the keeper on October 2, the defendant went away from the store, and returned about six o'clock in the evening. When he arrived there, the plaintiff being absent, he was informed by the keeper that the waitresses were not turning over to the keeper the money which they collected from the customers. The defendant testified without contradiction that when he arrived at the store, the plaintiff was not present, and upon receiving information from his keeper in reference to the conduct of the two waitresses, the only persons employed in the store, and the only persons who were there at the time except the keeper, he informed them that it would be necessary for them to turn over the money to the keeper; that the waitresses thereupon asked him who was going to pay them for their services; that he replied that he was not going to pay them and he supposed that they must look for their money to the plaintiff; that thereupon the waitresses refused to work longer and put on their hats and coats and left the store; that at that time there was but one customer in the restaurant who was just finishing his meal and that when he had finished the defendant locked up the store after having waited a reasonable time for the plaintiff to return. It further appeared that the defendant procured a padlock and staples and placed them upon the entrance door and kept the possession of the key of the padlock, together with the other keys which had been given to him by the plaintiff. He further placed a card upon the door, which had upon it, "Closed. Charles F. Manning, Constable of the City of Cambridge." The time of the closing of the store was between half-past six and seven o'clock. Just when the defendant had finished closing the store, as above described, the plaintiff and his attorney arrived. The plaintiff said nothing, but the plaintiff's attorney said that the defendant had no right to close up the place and that he was going to sue him for $3,000.

It further appeared that the next day the plaintiff had a conversation with his landlord and explained to him that he, the plaintiff, no longer had possession of the store; that the defend-

ant had the keys of it and had placed a padlock upon the door; that on the same day the defendant received a letter from the landlord, stating that he had determined to hold the defendant responsible for the rent of the store from October 2, 1907.

On October 7, 1907, the plaintiff gave a bond to dissolve the attachment which had been made by the defendant, and the defendant forthwith returned the keys of the store and certain food checks to the plaintiff, but returned no money. The defendant admitted that he owed to the plaintiff $24.37, but contended that the plaintiff could not recover it in this form of action.

The plaintiff produced no books of account, but had certain memoranda in pencil, which it appeared had been drawn up on the morning of the trial from other daily memoranda with the assistance of his attorney. The counsel for the defendant took from the plaintiff the memoranda and cross-examined him in reference to them. On redirect examination, the plaintiff offered the memoranda in evidence, and against the objection and exception of defendant they were admitted. The substance of the memoranda consisted of the calculations of the plaintiff in regard to the assessment of damages.

At the close of the evidence the defendant made several requests for rulings. The first three were for rulings as to each count that upon all the evidence the plaintiff could not recover thereon. The second set of rulings requested was as follows:

" 1. If the jury find that the plaintiff gave to the defendant the keys of the store, they are warranted in finding that the possession of the store was given to the defendant by the plaintiff.

" 2. If the jury find that fact as stated in request No. 1, then the defendant was justified in keeping the goods in the store and locking it up at least until notified by the plaintiff's landlord to remove them."

" 4. If the jury find that the plaintiff surrendered the possession of the store to the defendant and that the plaintiff's landlord assented to it and looked to the defendant for rent, that is a surrender of the premises into the possession of the defendant by operation of law.

" 5. If the jury find there was a surrender of the premises by

operation of law, then the defendant was justified in locking it up and holding the attached goods there as a place of storage.

" 6. There is no evidence warranting a finding that the defendant unlawfully excluded the plaintiff from access to the store."

" 10. Under the pleadings the plaintiff is not entitled to recover for annoyance, inconvenience, and loss of business and reputation, if any he suffered.

" 11. Under the pleadings the only damage that the plaintiff is entitled to recover, if any, is such damage as is allowed in an action for conversion."

The rulings asked for were refused. The jury found for the plaintiff in the sum of $1,000 ; and the defendant alleged exceptions.

Other facts are stated in the opinion.

*F. J. Carney*, for the defendant.

*J. L. Sheehan*, (*J. S. Cannon* with him,) for the plaintiff.

HAMMOND, J.   1.   Upon the evidence the jury might properly have found that, even if the plaintiff had consented that the defendant should have the keys of the restaurant in his possession for the preservation of the attachment, he consented only upon the condition that the restaurant should be open for business at its usual hours ; that the defendant, in view of the failure of the waitresses to pass over to him the money received by them from the customers and of the other circumstances in the case, had concluded to stop the business and entirely exclude the plaintiff from the restaurant, even during business hours ; that in execution of that purpose he procured a padlock and some staples and with them locked the entrance door, and further posted upon the door the notice that the place was closed by him as constable ; and that in this way the plaintiff was excluded from the restaurant for several days against his own will.   The jury were instructed in substance that the plaintiff could not recover if he consented to being excluded.   Their verdict shows that they found he was excluded from the store without his consent.   In thus excluding the plaintiff the defendant exceeded his authority under the writ and became a trespasser *ab initio*.   *Walsh* v. *Brown*, 194 Mass. 317.

2.   Being without justification for the seizure of the articles of

personal property he was liable in conversion for the property he seized. It is urged, however, by the defendant that even if trover will lie for the conversion of the personal property named in the first count, it will not lie for the conversion of the money in the second count; that the taking and keeping of the money by the defendant under the circumstances created only a general indebtedness from him to the plaintiff, and that trover will not lie for a general indebtedness.

The return made by the defendant is not set out in full in the record before us, but it is stated that it appears from the return that after deducting from the money which the defendant received the money which he had paid out there was left in his hands $24.37. It is to be assumed that he originally took the money by attachment under his writ. Having by subsequent misconduct become a trespasser *ab initio*, he no longer had any right to its possession. It is as if he had wrongfully taken it in the first place to his own use. It is elementary that for the conversion of money, either in the form of specie or notes, trover will lie.

So far as respects the third count, which was in trespass, suffice it to say that the evidence was ample to support it.

The first three requests therefore were rightly refused. As to the second set of requests, the first and second were rightly refused because they single out only one of several circumstances bearing upon the same issue and ask for its effect when considered apart from the others; the fourth and fifth were covered, so far as sound in law, by the instruction given to the effect that if the plaintiff consented to being excluded from the store he could not recover; the sixth was rightly refused because inconsistent with a legitimate view of the evidence, and the same may be said of the tenth and eleventh.

3. The memoranda produced by the plaintiff and taken by the defendant, and with reference to which the defendant cross-examined the plaintiff, were properly admitted in evidence. Even if the rule making a paper admissible, which is called for by one party, is produced by the other and is examined by the party calling for it, is not applicable, there is still a reason for the admission of the memoranda in this case. In a certain sense they were a part of the cross-examination, and the presiding

judge may well have thought that they should be admitted not
as evidence of the truthfulness of the statements therein con-
tained, but in order to the full understanding of the cross-exami-
nation. The record shows no error in its admission.

4. The jury returned a general verdict for the plaintiff in the
sum of $1,000, whereupon the defendant moved to set aside the
verdict for the three following reasons (among others):

" 3. While three separate and different counts for different
causes of action were submitted to the jury, a general verdict in
favor of the plaintiff was found and it should therefore be set
aside.

" 4. The measure for damages under the different counts and
different causes of action submitted to the jury was not the same
and the general verdict in favor of plaintiff should therefore be
set aside.

" 5. The defendant was prejudiced by the finding of a general
verdict in favor of plaintiff because different counts for different
causes of action in which the measure of damages was not the
same, were submitted to the jury, and it should therefore be set
aside."

Where there are two or more counts each for a different cause
of action, it is the right of either party to have a separate verdict
on each count, and such a course often is taken. But it is a
right which may be waived, and it is not unusual to have a gen-
eral verdict on all the counts. *Wood* v. *Southwick*, 97 Mass.
354. And in the absence of any request to the contrary such a
verdict, at least where there is evidence to sustain each count, is
good. *Richmond* v. *Whittlesey*, 2 Allen, 230.

In *Richmond* v. *Whittlesey*, *ubi supra*, there were four counts,
the first and second being for assault and battery and false im-
prisonment, the third for the conversion of a horse and the fourth
for slander. The jury were instructed that the plaintiff was not
entitled to recover on the fourth count. There was a general
verdict for the plaintiff, and the defendants moved in arrest of
judgment, one of the grounds alleged being that " the verdict is
a general verdict on four counts, and it does not appear on which
counts the jury found for the plaintiff, or how damages were
assessed by them on the several counts." The motion was over-
ruled and on the exception of the defendant the case came to

this court. In giving the opinion of the court Bigelow, C. J., used the following language : " The motion in arrest of judgment cannot prevail. The several counts in the declaration, except the fourth, were properly joined under Gen. Sts. c. 129, § 2, cl. 5, and the jury were correctly and distinctly instructed by the court that the plaintiff was not entitled to recover on the fourth count. It must now be assumed that under this explicit instruction no damages were given for the alleged slander set out in the fourth count. The verdict was therefore a general verdict in damages on three counts, which were valid and sufficient and properly joined, and in support of which there was evidence laid before the jury. The assessment of entire damages on all the counts constitutes no error. If the defendant wished that the damages on each count should be assessed and returned separately, he should have requested the court to instruct the jury to return their verdict accordingly. Having failed to do so, he cannot now take the objection that the verdict was general and does not show the damages which were assessed on each cause of action set out in the declaration. 1 Chit. Pl. (6th Am. ed.) 445."

The principle thus set forth is decisive of this case. Moreover in the case before us it is to be noted that while there were three counts, yet so far as respects the question of damages they were closely connected with each other and described acts substantially forming parts of one and the same general transaction ; and the trial judge may well have thought that the most sensible way was for the jury to assess the damages in one general sum, and that the parties were content with that method.

*Exceptions overruled.*