## JENNIE TOURLES *vs.* JOSEPH R. HALL.

Suffolk.   March 7, 1960. — July 20, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Trespass.   Conversion.   Levy.   Officer.   Husband and Wife,* Wife's business, Separate property of wife. *Sale,* On execution, Adjournment.
*Notice.*

The possession of a lessee of restaurant premises and of fixtures and
equipment therein was sufficient to support an action for trespass on
the premises and conversion of the personalty.   [302]

Personal property employed by a married woman in her separate business
might properly be seized on an execution against her husband in the
absence of a recorded married woman's business certificate under G. L.
c. 209, § 10, and subsequent recording of such a certificate would not
affect the validity of the seizure; but a new seizure of the property
under the execution after the recording would not be justified.   [302–
303]

Even if a sheriff's initial entry on business premises and seizure of personal property there under an execution was proper, he became a trespasser ab initio by reason of padlocking the premises and placing no
trespassing signs thereon.   [303]

An execution sale was not properly adjourned merely by changing the
original date of the sale to a later date by writing on the posted notice
of the sale that it was "continued until" the later date; and the sale
held on the later date was invalid.   [304]

An invalid sale of personal property seized on execution was a conversion
of the property even if the seizure had been valid.   [304]

TORT.   Writ in the Superior Court dated February 23,
1954.

The action was tried before *Swift,* J., who ordered a verdict for the defendant on each count of the declaration.
The plaintiff alleged exceptions.

*Sydney Berkman,* (*Reuben Goodman & Joseph Kruger*
with him,) for the plaintiff.

*Charles R. Desmarais,* for the defendant.

WILLIAMS, J.   This is an action of tort for trespass and
conversion against a deputy sheriff of the county of Barn-

stable. The declaration is in three counts. In the first count it is alleged that on or about August 20, 1953, the defendant broke and entered the plaintiff's close, namely the land and building thereon known as Shore House Restaurant located in Falmouth; in count 2 it is alleged that on or about August 21, 1953, the defendant converted goods, the property of the plaintiff, described in an annexed schedule A; and in count 3 that on or about September 3, 1953, the defendant converted other goods described in an annexed schedule B. The defendant in his answer denies the plaintiff's allegations and further answers by way of justification that his acts were performed in his official capacity as deputy sheriff "and in the furtherance of a legal levy and sale under the law."

There was evidence for the plaintiff that in 1953 she lived on Orkney Road in Brighton with her husband and children. From June until Labor Day she operated a restaurant in Falmouth and her husband, William Tourles, worked with her. The restaurant was located in a two story frame building, the second floor of which was used for the living quarters of the plaintiff's family and the kitchen help. The restaurant had a seating capacity of 100. The plaintiff had a lease of the building, her landlord being Annie Agbay of Worcester, and had leased the fixtures and equipment of the restaurant from one Jennie Poulack. She had operated the restaurant since 1947, but had filed no married woman's business certificate under G. L. c. 209, § 10.

On August 20, 1953, the defendant entered the restaurant premises with an execution dated January 30, 1950, on a judgment recovered by one James Byron against William P. Tourles, the plaintiff's husband, and one John P. Stolos, for the sum of $2,000. He seized the property listed by the plaintiff in schedule A as that of Tourles, told the plaintiff that the place was under attachment, and left a keeper in possession. On August 21 the plaintiff filed a married woman's business certificate. Keepers remained on the premises until the afternoon of August 24. Each day the plaintiff told the defendant to take "his keeper and stuff he

had attached and get out." On August 23, the defendant placed one of several cards, on which was typed "All personal property while contained in this restaurant, has been seized by me, by virtue of execution . . . dated January 30th, 1950," on the cash register. The plaintiff, on his demand, gave him the money in the register amounting to $151. At three o'clock on August 24, the defendant put padlocks and no trespassing notices on all outside doors, nailed up one door leading from the kitchen to the upstairs tenement, and removed the keepers. At some time the plaintiff caused the locks to be broken and continued to operate her business.

On August 26 the defendant advertised the sale for cash of the following chattels, the same being listed in the plaintiff's schedule A: "1 six foot gas range 2 ovens 2 friolators 1 set coffee urn 1 coffee urn stand 2 sinks 1 broiler 1 steam table 1 reach in refrigerator chest 1 walk in refrigerator chest also kitchen equipment 15 booths 8 tables 1 cash register 1 cigar and cigarette case 12 booths 1 service bar 1 sink 1 back bar 1 check stamp register," the sale to be held on the premises at 3 P.M. on August 28. The notice was published on August 26 in the Cape Cod Standard Times, a newspaper published in Hyannis which is a part of the town of Barnstable, and was posted in Falmouth, Mashpee and Bourne. It was not published in a weekly paper which was published in Falmouth, nor in any newspaper published in Boston.

The defendant, having been advised on August 27 that "the advertisement of this sale was incorrect," changed the date of the sale to September 3 by writing on "his original notice . . . 'Sale continued until September 3rd at 3 P.M.' " "and posted" in the town hall in Falmouth. On August 28 the defendant was served with a temporary restraining order issued by the Superior Court in Boston (see G. L. c. 235, § 40) and thereupon released his keepers who had been reinstated in possession on August 26. The restraining order was dissolved on August 31 and on September 1 the defendant again reinstated the keepers. At that time,

on demand by the defendant, the plaintiff paid $15 to one of the keepers and made written demand on the defendant to "remove the keeper or the property which you claim to have attached and seized under the . . . execution, without unreasonable delay." On September 2 an "advertisement was placed" in the Boston Globe but not by the defendant, and on the same day there was a written demand by the judgment debtor Tourles that the defendant publish notice according to the provisions of G. L. c. 235, § 37.

On September 3, the defendant sold the advertised property for $1,000 to the judgment creditor James Byron and accepted the purchaser's check in payment.

The defendant testified that "throughout this period" he did not remove the property because he did not know who owned it, and that he had letters from three or four people who said that they owned it.

The case is here on the plaintiff's exceptions to the direction of a verdict for the defendant on each count. The evidence warranted a finding that the plaintiff was in possession of the premises under a lease and was there operating a restaurant with fixtures and equipment which she had also leased. Such possession was of a character sufficient to support her action of tort for trespass and conversion against the defendant if he deprived her of that possession without right. *Shaw* v. *Kaler,* 106 Mass. 448, 449. *Donahue* v. *Leventhal,* 302 Mass. 393, 394. *New England Box Co.* v. *C & R Constr. Co.* 313 Mass. 696, 707–708, and cases cited. See Prosser on Torts (2d ed.) § 13, pp. 58–59, as to trespass; Prosser on Torts (2d ed.) § 15, pp. 67–68, as to conversion. The burden of proving justification was on the defendant. See *Moors* v. *Parker,* 3 Mass. 310, 311; *Harriman* v. *Whitney,* 196 Mass. 466; *Robinson* v. *Bird,* 158 Mass. 357, 360; G. L. c. 231, § 147, form 40. His initial entry on the plaintiff's premises appears to have been justified. In the absence of a recorded business certificate the personal property employed by her in her separate business was liable to be taken on execution against her husband (G. L. c. 209, § 10) and the validity of the seizure

was not affected by the recording of a certificate on the following day. *Allen* v. *Clark,* 190 Mass. 556, 562.

There was no authority, however, for continuing the custody of the seized property on the plaintiff's premises through the agency of keepers. The provision of G. L. c. 223, § 48, that an officer, "if necessary, may appoint a keeper of personal property which has been taken on execution" does not afford a right to keep the property on the premises of a person who is not the judgment debtor without his consent. *Steuer* v. *Maguire,* 182 Mass. 575, 577. See *Fitchburg R.R.* v. *Freeman,* 12 Gray, 401, 406. While the defendant in his return on the execution stated that the goods "by reason of their bulk cannot be immediately removed" and in his testimony suggests the difficulty of getting someone to move them, these were questions of fact for the jury.

We need not pause, however, to decide whether the continuance of the keepers constituted a trespass since the defendant's act in padlocking the plaintiff's premises was unjustifiable and made him a trespasser ab initio. *Walsh* v. *Brown,* 194 Mass. 317, 319. *Morrin* v. *Manning,* 205 Mass. 205, 210. *Chetteville* v. *Grant,* 212 Mass. 17, 19.

There was a lapse of time, the length of which does not appear, between the plaintiff's resumption of possession by breaking the padlocks and the reinstatement of keepers on August 26. It could be found that the plaintiff's business certificate was then on file and that the taking of possession of the goods by a keeper was a new seizure which was not justified by the absence of a certificate. "[A]n officer who attaches chattels or takes them on execution cannot maintain his right, and retain his special property, without taking them into his possession and *keeping* them" (emphasis supplied). *Field* v. *Fletcher,* 191 Mass. 494, 496.

The plaintiff's contention that the sale on execution was not advertised in accordance with the statutes is not supported by the evidence. It appears from the defendant's return that the notice of the sale on August 28 was posted in Falmouth, Mashpee and Bourne and in the absence of

evidence to the contrary it may be presumed to have been posted in a public place.   See G. L. c. 235, § 37.   It was not necessary for the defendant to prove a further publication in a newspaper published in the town where the debtor had his last and usual place of residence without a request by "either party" that such publication be made.   See § 38.

The sale, however, which was advertised for August 28 was not legally adjourned to September 3.   It is provided by § 39 that the sale may be adjourned but by "giving notice . . . by a public declaration thereof at the time and place previously appointed for the sale."   This was not done and it must be held that the adjourned sale on September 3 was invalid.   The defendant exceeded the limits of his authority and became a trespasser ab initio.   Even if the plaintiff's property was lawfully seized and held, G. L. c. 209, § 10, gave the defendant no right to sell it by an illegal proceeding and the sale could be found to have been a conversion.   *Kolas* v. *LaRochelle,* 270 Mass. 49, 54.

It is apparent that there was evidence for the jury of a trespass under count 1 and a conversion of the property listed in count 2.   It was error to direct a verdict for the defendant on these counts.   While there was no evidence that the defendant actually sold any of the items of personal property listed in schedule B of count 3, it could be found that some if not all of the items were on the premises which he padlocked on August 24 and that they were converted for reasons hereinbefore stated.   See *Jean* v. *Cawley,* 218 Mass. 271, 277.   As there must be a new trial we need not discuss the questions raised by the exceptions to rulings on evidence as it is unlikely that the issues involved will again be presented.

*Exceptions sustained.*