162

**PRINTABLES, INC., Plaintiff,**

v.

**BRITTANY DYEING & PRINTING CORP., Defendant.**

**No. 89 Civ. 1311(MEL).**

United States District Court,
S.D. New York.

April 23, 1991.

Lester A. Lazarus, P.C., New York City, for plaintiff; Andrew P. Lederman, of counsel.

Parker Chapin Flattau & Klimpl, New York City, for defendant; Martin G. Bunin, of counsel.

LASKER, District Judge.

Printables, Inc. ("Printables") alleges that Brittany Dyeing & Printing Corp.

("Brittany") has wrongfully retained or converted property belonging to Printables, and seeks the return of the claimed property, pursuant to 11 U.S.C. § 542, or, in the alternative, for damages for its alleged conversion.

In 1989, this Court granted Brittany's motion under 28 U.S.C. § 157(d) for withdrawal of the adversary proceeding from the bankruptcy court. *In re Printables, Inc.*, 89 Civ. 1311 (MEL) (1989). The matter is now before this Court on Brittany's motion pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy proceedings by Bankruptcy Rule 7012(b), to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion is granted.

## I. BACKGROUND

Printables, then in the business of selling printed fabrics, had engaged Brittany throughout the course of their three year relationship to dye, print, or otherwise treat its fabrics. Under this arrangement, Printables would deliver unprocessed textile fabric to Brittany. Brittany would then, pursuant to specific instructions from Printables, print or finish the delivered fabric and then ship the fabric to Printables' customers.

From May 26, 1987 through July 29, 1987, Brittany rendered printing and dyeing services in the total amount of $232,559.89. Under Massachusetts' Spinner's Lien statute, M.G.L. Ch. 255, § 31A,[1] Brittany retained a lien in favor of Printables' fabric and screens then in its possession, and could, upon default and after proper notice to Printables, sell the liened property at a public auction to satisfy this indebtedness. M.G.L. Ch. 255, § 31B. In a letter dated August 18, 1987, Brittany made a formal demand upon Printables for full payment of these amounts. In this letter, Brittany also cautioned that,

"In the event that Karmatex Printables, Inc. does not pay these invoices on or before August 25, 1987, Brittany has authorized the Deputy Sheriff for Bristol County to hold a public auction at its premises at 2:00 p.m. on August 25, 1987. At such time, the goods indicated on these invoices currently held by Brittany will be sold in order to secure payment of your debt to Brittany."

Included in this letter was a copy of the notice of sale, which had been published in the August 4, 1987 edition of the New Bedford Standard Times. This caption stated as follows:

"NOTICE OF SALE FOR SATISFACTION OF LIEN UNDER GENERAL LAWS CHAPTER 255 SECTION 31B

Pursuant to the provisions of General Laws Chapter 255, Section 31B, notice is hereby given that there will be sold at public auction at 2:00 p.m. on Tuesday, August 25, 1987, on the premises of Brittany Corp. ... the following personal property:

57,461 yards first quality printed finished goods 44" to 60" wide.

35,500 yards of second quality printed finished goods 44" to 60" wide, including 6,242 yards of mill defects.

106,201 yards of goods prepared for printing, 44" to 60" wide.

882 textile screens...."

Printables failed to tender the requested payment. Prior to the impending Sheriff's sale, Printables moved in Massachusetts district court for (i) a temporary restraining order prohibiting the proposed public sale; (ii) a preliminary injunction and further order compelling Brittany to conduct any sale pursuant to the Spinner's Lien statute; and (iii) a judgment for Brittany's alleged violation of Printables' copyright.

---

1. Section 31A provides in relevant part:

A lien on account of work, labor and materials furnished in the spinning, throwing, manufacturing, bleaching, mercerizing, dyeing, printing, finishing or otherwise processing of cotton, wool, silk, artificial silk or synthetic fibers, or of leather goods or hides, or of goods of which cotton, wool, silk, artificial

silk or synthetic fibers form a component part ..., as against goods in the lienor's possession, shall extend to any unpaid balance of account for work, labor and materials furnished in the course of the any such process in respect of any other such goods of the same owner whereof the lienor's possession has been terminated....

The district court, ruling from the bench, denied Printables' motion for the temporary restraining order, and Printables subsequently voluntarily discontinued the Massachusetts action.

On August 25, 1987, the Sheriff's sale was held, at which Brittany purchased the fabric and screens specified in the notice of sale for $75,000.00, and was issued a deed to such property by the Deputy Sheriff.

On February 23, 1988, Printables filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On August 3, 1988, it brought this adversary proceeding against Brittany to recover property it claims belongs to the bankruptcy estate.

## II. DISCUSSION

Printables alleges in its complaint that, where it has made a demand upon Brittany to turn over fabrics and screens in its possession, Brittany's refusal to comply with its request constitutes a violation of 11 U.S.C. § 542. Section 542(a) provides that,

Except as provided in subsection (c) or (d) of this section, an entity other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

Brittany's refusal to comply with Printables' demand to turn over property in its possession alone would be insufficient to charge Brittany with a violation of 11 U.S.C. § 542. In order for Printables to bring an action under § 542, it must demonstrate that it has an interest in the property sought to be recovered, and that such interest falls within the meaning of "property of the estate" as defined by 11 U.S.C. § 541. Section 541(a), in particular, provides that "property of the estate" includes "all legal or equitable interests of the debt-or in property *as of the commencement* of the case." 11 U.S.C. § 541(a)(1) (emphasis added). As of the commencement of its Chapter 11 proceeding, Printables did not have any property interest in the fabric and screens purchased by Brittany at the public auction. Any interest Printables may have had in such property was extinguished by the foreclosure sale, which was conducted according to Massachusetts law and completed six months prior to Printables' filing for bankruptcy. Accordingly, Printables has not sufficiently alleged a violation of § 542.

Printables alleges as an alternative grounds for recovery that Brittany has converted Printables' property for its own use and benefit. But "[c]onversion requires the wrongful exercise of dominion over personalty, including money, to which a plaintiff has an *immediate right of possession*." *Schmid v. The National Bank of Greece*, 622 F.Supp. 704, 713 (D.Mass. 1985) (*citing Morrin v. Manning*, 205 Mass. 205, 91 N.E. 308 (1910), and *Marshall Vessels, Inc. v. Wright*, 331 Mass. 487, 120 N.E.2d 286 (1954)) (emphasis added)[2]; *see also Cauble v. Mabon Nugent & Co.*, 594 F.Supp. 985, 995 (S.D.N.Y.) (conversion occurs when one person interferes with another's superior possessory rights in property). The burden rests with the plaintiff of proving that at the time of the alleged conversion it had a right to immediate possession of the claimed property. *Marshall Vessels, Inc. v. Wright*, 331 Mass. 487, 120 N.E.2d 286 (1954).

Here, the suggestion is made by Printables for the first time in its memorandum submitted in opposition to Brittany's motion to dismiss that the alleged conversion is not of property sold at the sheriff sale, but rather of property sold prior to the sheriff sale. In this regard, Printables has produced certain documents referring to three shipments of "Pattern # 644" document from Brittany to Swat, Inc. occurring prior to the August 25, 1987 sheriff's sale. *See* Affirm. in Opp. memo., Exhibits "A", "B" and "C". "Pattern # 644," it is said, is a copyrighted pattern

---

**2.** Massachusetts common law is applicable to this Court's consideration of Printables' conversion claim since the purported tortious conver-sion occurred in Massachusetts. *See Fort Howard Paper v. William D. Witter, Inc.*, 787 F.2d 784 (2d Cir.1986).

lawfully belonging to Printables. However, the argument that such shipments constituted the alleged conversion does not accord with the complaint as pleaded. The complaint specifically states that, prior to the commencement of the Chapter 11 proceedings, Brittany had in its possession 57,-461 yards of first quality printed finished fabric, 35,500 yards of second quality printed finished fabric, 106,201 yards of fabric prepared for printing, and 882 textile screens—all of which allegedly belonged to Printables, *see* Complaint at ¶¶ 10, 11, and all of which was sold at the Sheriff's sale. *See* "Sheriff's Bill of Sale" attached as Appendix F in Affidavit in Opposition. The complaint alleges conversion only in relation to the described property; it makes no claim upon any other. For the purposes of the motion before the Court, then, the property which is the subject of Printables' conversion complaint is not the fabric shipped prior to the Sheriff's sale; it is the fabric and screens sold at the public auction.

■ On the strength of the facts as pleaded, Printables' claim for conversion is illfounded. Brittany undertook to render services for Printables for which it was entitled to be paid, and in lieu of payment, it retained a lien, pursuant to the Massachusetts' Spinner's Lien statute, on the fabric and screens then in its possession. Based on this lien, Brittany had equal, if not superior, possessory rights in the claimed property, *see, e.g., Bank of Utica v. Castle Ford, Inc.*, 56 Misc.2d 301, 288 N.Y.S.2d 297 (Sup.Ct.1968); *see also Welsh v. United States*, 220 F.2d 200, 203 (D.C. Cir.1955) (lienor becomes co-owner of property subject to the lien), and, accordingly, was completely justified in taking steps to foreclose its rights under the Spinner's Lien statute. That the ensuing public auction was held only after Brittany had provided proper notice as required by the Spinner's Lien statute (M.G.L. Ch. 255, § 31B), evidences a lawfully conducted foreclosure sale, which has been held to be a complete defense to a conversion action brought against a lienor. *See, e.g., Wm. H. Wise & Co. v. Rand McNally & Co.*, 195 F.Supp. 621 (S.D.N.Y.1961) (where artisan's lienor complies with notice requirement of New York lien law §§ 200 *et seq.* prior to a foreclosure sale, it cannot be found liable for conversion).

In sum, Printables has failed to allege or prove facts from which it may be concluded that it has any interest, whether equal or superior to Brittany's, in the property purchased by Brittany at the public auction. Since the sale of the fabrics and screens was lawfully conducted, giving Printables upon proper notice an opportunity to bid thereon, it did not constitute a conversion. Any interest Printables may have had in this property was extinguished at the sale on August 25, 1987. Accordingly, the fabric and the screens never became "property of the estate" within the meaning of section 541 of the Bankruptcy Code.

Brittany's motion to dismiss the complaint is granted.

It is so ordered.