Swiderski, Appellant, v. Rainey.

222

Argued April 20, 1934. Before
Trexler, P. J., Keller, Baldrige, Stadtfeld, Parker
and James, JJ.

*James Gregg* of *Gregg & Copeland,* and with him
*Wm. J. McDowell, Jr.,* for appellant.

*Jos. W. Ray, Jr.,* of *Shelby, Hackney & Ray,* and
with him *R. Kay Portser,* for appellee.

Opinion by Baldrige, J., July 13, 1934:

Catherine Swiderski, a widow, seeks to recover compensation for the death of her husband.

The deceased was employed by the defendant company in mining coal. About 9:30 in the evening of March 3, 1930, he was injured by a fall of several tons of coal and slate, which completely covered him. On March 28, 1930, a compensation agreement was entered into, wherein it was agreed that the claimant was an employe of the defendant as a pick miner and that he sustained accidental injuries, described as follows: "Fender broke, allowing gob to slide through on employe. Abrasions of back of head, forehead, lower right back and contusion of right testicle and right hip." On June 6, 1930, claimant signed a final receipt. He returned to work, June 17, 1930, and worked until December 26th of that year, when he was unable to continue his employment. On April 13, 1931, he filed a petition to reinstate the compensation agreement. The referee found that the claimant was suffering from carcinoma of the testicle, either as a direct result of the injury or that it was aggravated thereby. On June 29, 1931, the referee entered an order that the compensation agreement be reinstated as of December 27, 1930. This was, in effect, an award and notice thereof was received by the defendant on or about July 7, 1931, and no appeal was taken therefrom. The employe died July 26, 1931.

On September 17, 1931, the widow filed a death claim, alleging that the accident caused an injury to the employe's body and testicle, which, in turn, caused cancer and resulted in death. The compensation agreement and record of the former proceedings were offered in evidence at the hearing for the purpose of showing that the nature of the injury to the employe had been adjudicated and no appeal taken. This record was admitted over defendant's objection and ad-

ditional medical testimony was received. The referee awarded compensation. An appeal was taken to the compensation board, and, on May 7, 1932, the board found that the evidence was insufficient to support the finding that the deceased had suffered a direct injury to the diseased organ, and the record was remanded to the referee for further hearing. The referee, on July 7, 1932, after additional testimony was taken, including that of Joseph W. Kish, the "buddy" who was working with the deceased at the time of the accident, and the attending physicians, granted compensation, and his findings of fact and conclusions of law were affirmed by the board. An appeal followed to the court of common pleas, and it sustained the exceptions to the findings of the referee and the board, and directed judgment to be entered for defendant. Hence this appeal.

The question before us is whether there was sufficient competent evidence to sustain an award. The board held that the agreement reciting the injury to the testicle and the payment of compensation until the employe's death was not conclusive evidence of the injury, as found by the referee. It expressed the opinion, however, that the evidence did raise a presumption of law that the injury had been sustained, which ought to have been reasonably overcome by the defendant, and, as the record disclosed that the defendant originally conceded the injury by allowing the award to stand, without prosecuting an appeal or thereafter contesting the fact, when it had an opportunity, by asking the decedent to explain further details of the accident, or the nature of the injury he sustained, the defendant failed to carry the burden it was required to assume. We find no reason to interfere with this conclusion.

A consideration of the testimony before us discloses that prior to the time of the accident, decedent was

apparently a strong, well man—able to do heavy work. He had already that afternoon and evening loaded five wagons of coal, each containing two tons, and, with his "buddy," was engaged in loading the sixth wagon at 9:30 P. M., when a fall of several tons of roofing completely covered him with a foot of coal and slate, a portion of which was in lumps, one about two feet square. The rescuers found the deceased in a position, illustrated by Kish, and described by the referee as follows: "As we see the position of the witness he is crouching down on his haunches with his head bent over toward his knees in a jack-knife position, his legs slightly spread apart and his buttocks not touching the floor." Kish testified: "He says to me when I yelled for help the time that he was covered and the last stone came down and something bursted underneath; right here (indicating lower abdomen) just like you have a piece of cord in your hands and tear it. Something busted right down in here (indicating lower abdomen)." When the deceased was rescued from his precarious position, he was in a hysterical condition until he was assured of his safety. Accompanied by Kish, he walked to the bottom of the shaft, which required a few minutes, and he was then taken to the mouth of the pit, from whence he went to his home, about a five-minute walk. Then Kish took him in an automobile to the office of Dr. Walker, the company's physician, located less than half a mile away. According to the testimony, the injured man got out of the car with difficulty, but he was able to walk up the stairs leading into the physician's office. He said he felt hurt all over, but complained chiefly of his body, shoulders and back, and made no reference to the other parts of his body. The doctor's examination was more or less of a superficial character, requiring but ten or fifteen minutes, and was confined to the upper portion of his body; no serious injuries

were found. The injured man returned home, and, under his wife's testimony, that night he gave expression to his pain by moaning, was unable to sleep, and spent a considerable part of the time sitting on the side of the bed holding the lower part of his abdomen. It was not until twenty-four to forty-eight hours after Dr. Walker first saw the deceased that he complained to him of the injury to his scrotum. Then a further examination was made, and it was found that his right testicle was enlarged three or four times its natural size. This condition did not improve under the treatment prescribed. On April 2, 1930, Dr. Disque, a genitourinary specialist, was consulted, and he advised an operation, which was performed on April 8, 1930, by Dr. Burkholder, now deceased, assisted by Dr. W. A. Marsh. This surgical interference disclosed the existence of cancer, which necessitated the removal, not only of the right testicle, but also of the spermatic cord as far as the abdominal ring. The testimony of Dr. Disque and the surgeons was to the effect that the operation did not reveal any bruise, hemorrhage or injury to the testicle, which they found to be a solid, fibrous tumor or malignant growth, which had evidently slowly developed over a period of time extending beyond March 3, 1930.

Dr. Walker, when asked what his examination of the diseased scrotum disclosed respecting the injury, testified: "My acceptance at the time was trauma, due to accident;" that the condition of this organ was one of the sequels of his injury; that as the injury was so pronounced twenty-four to forty-eight hours after the accident, there must have been some relation between the injury and the accident; that the squeezing and the jack-knife position of the deceased had naturally bruised the organ. In his judgment, it was possible for the decedent to have had such an injury without making any complaint to him on his first visit.

Dr. Marsh testified that he could not state whether the condition of the man's organ was due to an injury, but that if there had been a previous cancerous condition and he received an injury to that organ, "it surely would have aggravated it, the same as a normal organ." But, in answer to the question, "Well, did you also have the feeling that it was aggravated by some injury?" he stated: "We felt there was something else existing; and, of course, our professional opinion was that when we found what we did and had a history of injury we couldn't get away from the fact that it must have been aggravated." This witness said further, that, taking into consideration the amount of coal and slate that fell on him, doubled up in the shape that he was, and his condition within a period of twenty-four to forty-eight hours thereafter, he would attribute the acceleration of the disease to the injury; that a man could have a squeeze of the testicle without having a hemorrhage.

Dr. Disque testified that he could not account for so much swelling in that brief period of time; that an injury would have caused the process to advance more rapidly, and that while the development "might" have been rapid, an injury would accelerate it. He said further: "That is the very reason why I think it (cancer) existed prior to the accident and that the injury merely accelerated its growth. That is my opinion of the whole thing."

The surgeons apparently were of the opinion that there was a preexisting cancer, that an injury to the testicle would aggravate it, causing a rapid increase in size, and would reasonably account for its condition twenty-four to forty-eight hours after the injury. We think there was ample evidence to sustain the findings of the referee and the board that the deceased did sustain an injury to his testicle. That seems to be the only rational explanation of the severe

pains the injured man experienced the night of the accident, and of the enlargement of the affected organ within a comparatively short time thereafter. The lower court, in our judgment, was in error in holding that the testimony failed to establish definitely that the deceased received an injury to his diseased testicle, or that the medical testimony does not establish the relationship between injury and death. As there was adequate competent evidence to show the aggravation of a cancerous condition due to an accident, the claimant is entitled to compensation: Whittle v. Nat. Aniline & C. Co., 266 Pa. 356, 109 A. 847; De Beaumont v. Brown et al., 104 Pa. Superior Ct. 158, 158 A. 643.

The judgment is reversed and the record remitted to the court below with instructions to enter judgment upon the award as affirmed by the board.