Lucas *v.* Haas Coal Company (et al., Appellant).

Argued April 22, 1935.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John M. Reed,* for appellant.

*Septer W. Douglas,* with him *Daniel F. McCarthy,* for appellees.

OPINION BY PARKER, J., July 18, 1935:

Andy Lucas met with an accident on October 22, 1931, while in the course of his employment with Haas . Coal Company. An open agreement for total disability was entered into and approved by the Workmen's Compensation Board. On February 1, 1932, the defendant presented a petition for review and on March 10, 1932, Lucas died, before the petition for review was heard. Thereafter Catherine Lucas, his widow, presented a petition for compensation on account of her husband's death. Both cases were heard and argued together and involved the same question, which is thus stated by the appellees: "Is there competent evidence on the record to sustain a finding of fact that a cancer of the stomach was aggravated by injury so that complete [total] disability resulted, and death was hastened?" The referee terminated the open agreement and refused compensation for death, whereupon the board reversed the referee and awarded compensation in the one case for the period prior to the death of Lucas and in the other case awarded compensation to the widow for the benefit of herself and her minor children. These awards were affirmed by the court below.

We will refer to the evidence produced in support of the claim. On the day of the accident Lucas, while engaged with two other laborers in pushing a mine car loaded with one and one-quarter tons of coal up a grade, slipped and struck the left side of his abdomen on the car and fell across an iron rail, again violently striking his abdomen at the same location. He had difficulty in talking and in getting to his feet but finally succeeded in raising himself with the assistance of his arms. One of the men who was working with him testified that when he inquired whether he was hurt, Lucas only moaned and the witness "did not know

whether he was killed or still alive" as he "sat there and held on to the car a half hour." Lucas was unable to continue his work and was driven to his home where he was attended by a physician within two or three hours. This doctor made a hasty examination but found that the abdomen "was very tender and resistant to pressure, and tenderness throughout his abdomen and he had been vomiting several times—severe vomiting." As the call was an emergency one and in the place of a doctor who had been called, the physician gave him no particular treatment and did not see the patient again.

Dr. M. W. Heilman, a company doctor, saw the patient on October 25, when he found some trouble with the scrotum and a swollen testicle which he subsequently diagnosed as hydrocele, and a "definite epydimitis could be felt." This ailment cleared up prior to death. He found a mass in the region of the left kidney which was shown by later examination to be a carcinoma, or cancer, located in the greater curvature of the stomach. There was an abundance of evidence that Lucas was in apparent good health immediately prior to the accident, worked in the mine whenever there was work, doing the same heavy labor as the other miners, and outside of his regular employment within a year had, with the assistance of his son, built the house in which he and his family lived and, shortly prior to the accident, had graded his yard, wheeling considerable quantities of filling and erecting a retaining wall. They also testified that he appeared to be a rugged, healthy individual and members of his family said that he made no complaints. It was shown by the defendants' physicians that the cancer was present before the accident. It likewise appeared that Lucas was totally disabled from the time of the accident until the date of his death and that death resulted from the cancer. No post mortem examination was held.

The vital point in dispute is whether there was a causal connection shown between the accident and the disability and death. If the claims are to be sustained, it must be upon the ground that the cancerous condition was aggravated by the accident and that, by reason of the accident, Lucas was totally disabled and his death hastened. Claimants rely for their proofs of causal connection on the sequence of events and the testimony of an expert, Dr. R. G. Behan, a graduate of the University of Pittsburgh and the University of Berlin, who specialized in surgery and cancer cases. Dr. Behan did not see Lucas but, in answer to a hypothetical question which fairly comprehended the facts shown by competent evidence, as we shall later point out, was asked to give his professional opinion as to the connection between the accident and the death, when he testified: "If this disease—cancer of the greater curvature of the stomach, had been present at the time of the accident and this accident had produced such a severe injury that he had a swelling of the abdomen with marked tenderness, as elicited by the doctor and attendants on the same afternoon, I think the accident would aggravate the disease ...... If this accident had produced such manifestations of severity indicated by examination of the doctor, it evidently had also produced changes in the internal organs, especially in an organ like a stomach in which a cancer was present at that time, if the bleeding and hemorrhage had taken place in the cancerous mass, and it is well known that such changes incite a cancer to greater activity ...... It would hasten his death. An injury of this sort to a cancer which is present in the location indicated would hasten his death ...... From the history which was given to me, the man had been an active and healthy man prior to the accident, I would assume that he could have worked for a much longer period if the accident did not occur." He then

stated that, in his opinion, the injury most probably hastened his death. On cross-examination he stated: "From this sequence of conditions I believe there was a definite change in the cancerous mass at that time [time of accident] and that change was due to the injury." He later stated on cross-examination that the accident materially hastened death but that he would be unable to state precisely how much longer Lucas would have lived if the accident had not occurred, or the precise length of time by which the death was hastened.

If a pre-existing disease is aggravated and accelerated by an accident causing disability or death, compensation will be awarded. Both the appellate courts of this state have applied this principle to cases of cancer: Whittle v. Nat. Aniline & C. Co., 266 Pa. 356, 109 A. 847; Swiderski v. Rainey, Inc., 114 Pa. Superior Ct. 221, 228, 173 A. 458; Sepesi v. Pgh. Coal Co., 114 Pa. Superior Ct. 385, 174 A. 590; De Beaumont v. Brown, 104 Pa. Superior Ct. 158, 158 A. 643; Ellis v. Jones & Laughlin S. Co., 111 Pa. Superior Ct. 252, 169 A. 263. The expert called by appellees, a physician in good standing and properly qualified, showed a causal connection between the accident and the disability and death. As in the cases last above cited, the conclusion of the claimants' expert was materially strengthened by the sequence of events. There was abundant evidence showing a strong, robust man in apparent good health immediately prior to the accident receiving a severe blow at the precise point where the cancerous growth was, and it was immediately followed by total disability and death within a few months. We are all of the opinion that the evidence was sufficient to support the finding.

Complaint is made by the appellants that the hypothetical question did not recite the fact that the doctor who examined the patient three days after the accident

testified that he was anemic. The answer to this contention is that there was evidence from which it could be inferred that he was not anemic and, further, the doctor was interrogated on cross-examination as to whether his conclusion would be changed if he assumed the patient was anemic and he replied that the mere statement that the patient was anemic would not afford a proper basis for a legitimate inference, for it would be necessary to know more definitely what was meant by "anemic"; that if he was given the blood count of the patient which the experts called by appellants said they had made, he would then be able to give an opinion. There is no merit in this contention.

It is also suggested that there was not any evidence of bleeding and hemorrhage and that the claimants' expert, therefore, improperly assumed such condition. We do not so understand the testimony of the expert. We interpret the reference of the doctor to bleeding and hemorrhage to be a mere opinion or explanation as to how trauma affects a cancer and aggravates it. The answer was not predicated upon such a condition.

It is also urged that because the expert was unable to state the exact amount by which death was hastened the evidence was incompetent, and reference is made to the case of Saunders v. Pgh. Rwys. Co., 255 Pa. 348, 99 A. 1006. The Saunders case, however, was a common law action. The question there involved was the compensation to which a surviving husband was entitled where his wife had been suffering from a fatal disease and her death was hastened. There the jury were given no information from which they might apportion the damages to which the surviving husband was entitled. Here, we are not concerned with such an apportionment, for the widow and minor children are entitled to compensation if the date of death is materially hastened.

In conclusion, we find that there was competent evi-

dence showing an accident, an existing cancer, a violent blow to the body at the exact location of the cancer, an immediate disability, and expert evidence as to the effect which such trauma would have upon an existing cancer as well as the effect upon the life of the injured person. This brings the case within the principles announced in Whittle v. Nat. Aniline & C. Co., and the other cancer cases cited above.

The able argument of the counsel for the appellants would have been very persuasive if we had been a fact finding body, but such is not the case.

The judgments are affirmed in both cases.