New Jersey Department of Labor,
Workmen's Compensation Bureau.

MARY BEERMAN, PETITIONER, v. PUBLIC SERVICE CO-
ORDINATED TRANSPORT, RESPONDENT.

Decided April 1, 1937.

For the petitioner, *Abram A. Lebson.*

For the respondent, *Elmer Romine.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

This is a dependency claim filed by petitioner as the wife of one Henry Beerman alleging that under date of September 22d and September 29th decedent strained the recti and lumbar muscles. Decedent died on November 4th, 1935, and the undisputed cause of death is lympho-sarcoma. Petitioner. alleges that there is a causal relationship between the trauma and death either a direct cause or by aggravation.

Respondent denied the occurrence of the accident in their answer to amended petition. Mention may be made of the fact that an original petition was filed December 16th, 1935, alleging that on September 29th, 1935, decedent in endeavoring to prevent a large double wheel from falling strained the recti and lumbar muscles. An amended petition was filed April 27th, 1936, alleging occurrence on or about September 22d and September 29th. Both petitions were filed within the statutory time. In the later amended petition it is alleged that decedent on or about September 22d while installing or removing a clutch or transmission in endeavoring to prevent same from falling strained his recti and lumbar muscles.

At the conclusion of the petitioner's case, attorney for respondent moved for a dismissal of petition on various grounds, briefs were submitted and under date of November 10th, 1936, I denied the motion by order holding that petitioner had presented a *prima facie* case as to the accidents.

In again analyzing the testimony of both petitioner and respondent I am still of the opinion that decedent met with an accident arising out of and in the course of his employment. *Exhibits* marked *R-1* and *R-2*—12-18-36, are the original and copy of an accident report issued September 29th, 1935, by one W. Jesson, foreman, who testified and approved by J. W. Whetham, division superintendent of bus maintenance October 1st, 1935. This report described accident as follows: "while lifting tire off floor and setting it in an upright position on bus 6224 I felt a sudden strain in my abdomen I stopped the work I was doing and as I straightened up a severe pain continued through my back and abdomen. After doctor's examination he said I strained muscles in my back and stomach."

Testimony is also offered as to the previous occurrence including the fact that on September 25th, 1935, decedent was treated by Dr. Kroll for an acute myositis of traumatic origin as well as that of a fellow worker who decedent complained to immediately following the accident.

I am therefore holding that decedent met with an accident arising out of and in the course of his employment.

As to the question of the date the case of *Elio* v. *Singer Manufacturing Co.,* 160 *Atl. Rep.* 325, holds as follows: A petition for compensation appearing to have been filed in time should not be dismissed because no definite date of accident was alleged.

The question now to be determined is, if there was any causal relationship either directly or by aggravation between decedent's death and the trauma.

Decedent, age twenty-four, about six feet tall, weighing one hundred and eighty to one hundred and ninety pounds was in good health and had never been sick with the exception of an occasional cold for ten years preceding his death and had been employed by respondent company for several

years as a repairman, injures himself on September 22d causing according to diagnosis of Dr. Kroll "an acute myositis of traumatic origin"—"strained muscles—fiber in abdominal wall"—"erector muscles strain—lower part of abdomen." Dr. Kroll treated decedent once and advised him to see respondent's Dr. Pratzman.

Dr. Pratzman first saw decedent on September 29th, 1935, and diagnosed condition as "sprain of recti muscles and sprained lumbar muscle."

Decedent stopped work on October 6th, 1935, and died November 4th, 1935. Autopsy revealed decedent died from a lympho-sarcoma.

On October 7th, 1935, decedent admitted to Englewood Hospital for treatment, being sent by Dr. Pratzman. At the time of his death his weight was approximately one hundred pounds.

In considering the medical testimony I am confronted with the usual situation prevalent in issues of this type. A widow on one side whose resources have been cut off by the death of her husband, left with three children of tender age, dependent now on others for support relying upon the knowledge of practitioners who had examined and treated decedent unable to disburse any funds to engage experts who from their experience would be of assistance to her in testifying, and the respondent with unlimited funds at their command placing them in a position to engage medical experts who belonging to a school of thought in that particular field are definite in their statements to the effect that decedent's death could not have been in any way connected with the alleged trauma. Dr. Kroll and Dr. Pratzman, men of high standing and repute in their community, general practitioners, familiar with decedent's physical condition immediately after the accident were of the opinion that condition could have been aggravated by the trauma. Dr. Giladi, county physician of Bergen, who did not examine decedent, but in answer to a hypothetical question was of the opinion that injury could aggravate a pre-existing condition of sarcoma.

That the trauma as described could not have caused or aggravated lympho-sarcoma was the definite testimony of Dr.

Francis Carter Wood, Dr. Leila C. Knox, Dr. James Ewing, Dr. Edgar A. Ill, Dr. James J. Duffy and Dr. Harrison L. Martland. I need not comment upon the reputation and ability of the aforementioned physicians. Their reputations in the field of neoplastic surgery and their study of cancer in all its forms have won for them world-wide recognition.

Dr. Leila Knox, whose theory is generally agreed to by her associates did testify "that massaging—too much massaging would aggravate but this must be by opening up a larger number of blood vessels than those involved."

Medicine it is generally agreed is not a positive science. As in every field we find medical men divided in their opinions as to the cause, reaction and final termination of many diseases. In cancer the same situation applies. I have carefully reviewed the literature applicable.

What is cancer? The English word cancer comes from the Latin word "cancer" meaning "crab." The Romans used the word also to name the disease with which they were familiar. The general term "cancer" is often used to describe various kinds of malignant growths which strictly speaking are not really "cancers" in the sense that a physician may use the word.

Although the nature of cancer is not at present fully understood, there is a large amount of practical knowledge now available regarding its causation.

Authorities at present hold the opinion that cancers are caused, in a practical sense, by various forms of chronic irritation, to which the human body is exposed from the cradle to the grave.

Exactly how such irritation, or inflammation, operate to produce cancer or to favor its development, is the great question in cancer research to-day. For the average person, however, it is sufficient at present to know that some form of chronic irritation or chronic inflammation appears to play a most important part in the causation of all cancers.

There are many kinds of cancers, differing widely in their make-up and behavior. Some are external, some internal. Some grow rapidly, some slowly. Some spread quickly

through the body, others do not. Some are very dangerous, others are less harmful. All possess the common habit of disorderly growth.

There are two main reasons for this neglect of the prophylaxis of cancer. In order to prevent a disease one must know its causes, and every one has been told again and again that the ultimate cause of cancer is unknown. There is a very venerable and widespread belief, in and out of the medical profession, that cancer is caused by some mysterious microscopic parasite. To-day, however, the scientific evidence is against the parasite theory of cancer.

A review of the opinion of the authorities reveal that following Dr. William Seaman Bainbridge in his paper entitled "The Role of Trauma in the Production of Cancer" refers to many authorities who hold that trauma can incite or cause cancer.

His conclusion after citing the opinion of various authorities is as follows:

"The relation between trauma and cancer production is a medicolegal question of considerable interest and importance from the standpoint of industrial and other compensation.

"It also has a bearing on the study of cancer etiology and is of real concern to the patient.

"While there is wide divergence of opinion as to a causal relationship, the majority of those who contend to the contrary are pathologists who rarely deal with the patients directly, during life.

"It is conceded by many that the surgeon, with the full facts assembled before him—clinical history, signs, symptoms, and laboratory reports—is the one to make the decision in a given case, as to whether a neoplasm which follows a trauma is the direct result of the injury.

"It seems evident that no definite time limit can be set between the receipt, of a trauma and the onset of neoplastic formation.

"While a latent tumor may be brought into symptomatic prominence by a blow, it cannot be adduced that all tumors which appear following an injury have merely been waiting for an opportunity to announce themselves.

"When there is clear sequence of events—normal individual, injury, neoplasm, and the French postulates are met—the burden of proof rests directly with the trauma as the exciting cause of the cancer."

In a paper entitled "Injury as a Causative Factor in the Development of Malignant Tumors," by William B. Coley, M.D., and Norman L. Iginbotham, M.D., the following conclusion is arrived at after expressing the view of many outstanding authorities:

"A careful study of our own series of cases personally observed, we believe, warrants the following conclusions:

"(1) That a single local trauma may be important factor, probably the determining factor, in the development of malignant tumors of all types.

"(2) That trauma is a causative factor in a larger proportion of cases of sarcoma than carcinoma, and in a larger proportion of bone sarcomas than soft-part sarcomas.

"(3) That the interval of time elapsing between the injury and the appearance of the tumor is often much shorter than is recognized by most writers. In the majority of cases the tumor develops within the first month or six weeks of the injury but in a considerable number of cases it may develop within one or two weeks. The latter cases justify the classification of acute traumatic malignancy originally suggested by the English surgeons. The examples herein report furnish convincing evidence of the actuality of such a condition.

"(4) While courts and compensation bureaus both in this country and in Europe have very generally recognized single trauma as a competent producing cause of all types of malignant tumors, it is only fair to the insurance carriers that each case be studied and judged on its own merits.

"(5) If the case in question fulfills all the conditions laid down by Segond then a causal relationship between the injury and the tumor must be admitted."

A search of the cases develops one analogous to the case in question. *R. H. Simpson* v. *Industrial Commission* (1929), 169 *N. E. Rep.* 225. The facts are as follows: Decedent endeavored to help two fellow employes lift a weight of approximately five hundred pounds and had just pulled rope

when his hand "crunched down" and slipped. He immediately complained of a pain in his back on right side. The evidence reflected decedent prior to the incident had been a strong, vigorous, active man in good health. He never was well after the accident and died six months thereafter. Decedent died as the result of a lympho-sarcoma. It was held compensable on the ground that accident either caused, aggravated or accelerated a pre-existing sarcoma. *Gaetz* v. *City of Melrose* (1923), 193 *N. W. Rep.* 691; *Lucas* v. *Haas Coal Co.*, 179 *Atl. Rep.* 876; *Lewis* v. *Port of London*, 7 *B. W. C. C.* 577 *C. A.*; *McElligott* v. *Franford General Insurance Co.*, 2 *Mass. Ind. Acc. Bd.* 521; *Smith* v. *Primose Tapestry Co.*, 131 *Atl. Rep.* 703; *Winchester Milling Corp.* v. *Sencindiver*, 138 *S. E. Rep.* 479.

The above are cases in which it was held injury either caused or aggravated cancer. An extract from the later case reads as follows:

"The general rule clearly to be adduced from the decisions in this type of case, is that if the facts show a causal connection between the injury and the development of cancer, then the two cannot be separated and the victim of cancer is entitled to compensation. It frequently appears in the reports of these cases that doctors disagree as to the proper connection between the blow and the development of cancer, but from the standpoint of the Compensation act, where a workman is apparently healthy, as was the case here, and able to perform his regular work, and immediately following a severe blow a condition sets up which later turns out to be cancerous, the commissioner believes that the connection between the blow and such development is clear."

In conclusion I quote Dr. Ewing in "Modern Attitude Toward Traumatic Cancer Archives of Pathology 19:690—728—May, 1935:

"The interpretation of compensation laws should recognize that a trauma is never the sole cause of a cancer and is often only a subordinate, although determining, cause, that the probability of coincidence is great, that aggravation by injury is rare and difficult to establish, and that many difficulties and uncertainties will surround this subject for a long time

to come. Some form or recognition of partial liability seems necessary to meet these conditions. Without it the compensation law becomes a form of sickness insurance against the natural occurrence and ordinary consequence of one of the major causes of disability and the cause of ten per cent of the deaths."

In *Lundy* v. *Brown*, 106 *Atl. Rep.* 362, the late Mr. Justice Kalisch, for the Supreme Court stated:

"We think there was evidence which fully justified the finding of the court below on the mooted inquiry. It is true that the medical testimony in the case is in sharp conflict on the question whether the decedent died as a result of his injuries or from an entirely independent cause."

In my opinion there is sufficient evidence to warrant a finding that the sarcoma was aggravated by trauma and hastened decedent's death. I am therefore finding for the petitioner.