COMMONWEALTH *vs.* RALPH POLIAN.

Middlesex. November 8, 1934. — December 1, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Practice, Criminal,* Appeal with assignments of error, Requests, rulings and instructions, Ordering verdict, New trial. *Abortion. Evidence,* Dying declaration, Presumptions and burden of proof, Competency, Relevancy. *Witness,* Cross-examination.

Upon an appeal with assignments of error following a verdict of guilty · at the trial of an indictment, it was not open to the defendant to contend that there was error in the admission of certain evidence with respect to which he had not saved an exception nor specifically made an assignment of error, especially where, after the admission of such evidence, reference thereto was made by the defendant's counsel in cross-examination and by the trial judge in his charge, without exception by the defendant, and the substance of the evidence was contained in other evidence admitted.

Upon the record of the trial of an indictment for procuring an abortion, it was *held,* that a finding was warranted that a statement, which was made by the woman concerned at a hospital after the alleged abortion and shortly before her death and which was offered by the Commonwealth as a dying declaration under G. L. (Ter. Ed.) c. 233, § 64, was made by her in the belief that her death was imminent and that she could not recover.

It is not necessary to the admission in evidence under G. L. (Ter. Ed.) c. 233, § 64, of a dying declaration at the trial of an indictment for procuring an abortion, nor to the consideration thereof by the jury, that the preliminary facts required to make it admissible be proved beyond a reasonable doubt; it is only necessary that such facts be proved by a preponderance of the evidence.

The judge presiding at the trial of an indictment for procuring an abortion could not be required by the defendant to give, with respect to a dying declaration by the woman concerned, admitted in evidence under G. L. (Ter. Ed.) c. 233, § 64, instructions to the effect that an untrue statement in the dying declaration would justify the jury in disregarding it altogether; that there was no evidence that any doctor or nurse informed the declarant that her death was imminent; that if her mind was wandering at any time during the declaration, the jury would be justified in disregarding it; and that if any statements in the declaration were suggested to her "by the implications in the questions put," the jury would be justified in disregarding the declaration.

At the trial of an indictment for procuring an abortion, evidence, that the woman concerned went to a back room in a drug store of the de-

fendant, who said to her that he "would operate" for a certain sum, that he gave her something to drink which made her unconscious, and that shortly after her visit to the drug store she was seen in the neighborhood thereof, apparently in an intoxicated condition; together with medical evidence that a certain drug combined with whiskey might make one unconscious for a time and subsequently would produce symptoms of intoxication, that the woman had had an abortion, produced by an instrument, and that she had an infected uterus, such as frequently comes from a criminal operation, resulting in peritonitis, warranted the inference that while she was unconscious in the back room of the drug store the defendant used an instrument to produce an abortion, and warranted a verdict of guilty.

Under Rule 71 of the Superior Court (1932), the question, whether a verdict of not guilty should be ordered at the trial of an indictment, must be raised by the defendant by way of a motion to that effect and not by way of a request for an instruction.

A judge presiding at the trial of an indictment cannot be required to give instructions to the jury with respect to the legal effect of fragments of the evidence.

At the trial of an indictment for procuring an abortion, at which there was evidence that the abortion was performed by means of an instrument, there was no reversible error

(1) In the admission of testimony by a medical expert that the condition of the vagina and uterus of the woman concerned was "consistent with some instrument being pushed up in there" and that a criminal operation could be performed without leaving traces of trauma or laceration; such testimony was admissible to meet an argument, based on testimony that no physical evidences of the use of an instrument upon the woman were found, that the lack of physical traces showed that no such operation had been performed;

(2) In permitting the defendant to be asked on cross-examination whether he knew that a catheter, which was an instrument kept and sold by the defendant in a drug store conducted by him, could be used to produce an abortion, to which question he answered in the affirmative.

No error appeared in the denial of a motion for a new trial of an indictment where there was no abuse of discretion in its denial and the questions of law raised upon the motion were or could have been raised at the trial.

INDICTMENT, found and returned on May 9, 1934, described in the opinion.

The indictment was tried in the Superior Court before *Beaudreau,* J. Material evidence and exceptions saved by the defendant are described in the opinion. The defendant was found guilty and filed an appeal with assignments of error.

*W. G. Thompson & R. Spring,* for the defendant.

*F. G. Volpe,* Assistant District Attorney, for the Commonwealth.

LUMMUS, J.   The defendant was convicted of using an instrument upon the body of a girl named Berlettie Parker, sometimes called Betty Parker, on April 19, 1934, with intent to procure her miscarriage, in consequence of which she died.   G. L. (Ter. Ed.) c. 272, § 19.   The case comes here by appeal, with a summary of the record, a transcript of the evidence, and an assignment of errors, under G. L. (Ter. Ed.) c. 278, §§ 33A–33G.   The defendant was tried with the young man responsible for the pregnant condition of the girl, one John Marrano, who was convicted of being an accessory after the fact and did not appeal.

The girl went to a hospital on Monday, April 23, 1934, suffering from peritonitis.   On Saturday, April 28, the defendant was brought to her room, and she said that he was not the man that had operated on her in a drug store. A police officer then took the defendant out of the room, leaving a physician, a nurse and a police inspector with her. After the inspector had a short talk with her, the defendant was brought in again, and she then said that the defendant was the man that had operated on her in his own drug store.   The defendant denied the accusation, and pointed out its inconsistency with her earlier statement.   She explained her earlier statement by saying, "I didn't want to be a squealer.   He told me not to tell."   The foregoing was not a dying declaration, for there was no evidence that she knew that she was about to die.   The accusation, unequivocally denied as it was, was not admissible against the defendant.   *Commonwealth* v. *Kosior,* 280 Mass. 418, 422, 423.   But it was put in evidence without objection, and the contradictory statements of the girl were emphasized in cross-examination by the defendant's counsel, who is not of counsel in this court.   This evidence was referred to in the charge, without giving it definite importance or effect, and no exception was taken to what was said.   The essence of the accusation was also contained in the dying declaration later made.   No point is open in the

absence of an exception and a specific assignment of error. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336.

The condition of the girl became worse, and about eleven o'clock on Sunday morning several inspectors came to the hospital and took a statement from the girl in the presence of the physician and the nurse. The physician told the girl that she was not going to live, that the doctors had given up all hope, and asked her to make a "dying confession" or "dying declaration." She said, "I will." The physician asked her, "Do you believe you are going to die?" She answered, "I do." The physician, beginning to examine her by question and answer, said, "We want you to know you are not going to get better. Do you believe that, Betty?" She answered, "Yes." One witness testified that the girl said, "I know I am going to die." Early in the examination the girl asked, "Am I going to have an operation?" Apparently this question was not answered, but an inspector said, "Betty, do you believe you are going to die?" She answered, "Yes." A little later, during the examination, she turned to the physician and asked, referring to hopeful assurances given her early in the same morning, "Why did you lie to me?" The nurse answered, "we are not supposed to tell you your condition, Betty, but it is necessary now." The girl died early Monday morning.

The defendant contends that the admission, under G. L. (Ter. Ed.) c. 233, § 64, of the dying declaration was error. Such a declaration is not admissible unless all hope of recovery has gone from the mind of the declarant, and he speaks under a sense of impending death. *Commonwealth* v. *Brewer*, 164 Mass. 577, 582. *Commonwealth* v. *Bishop*, 165 Mass. 148, 152, 153. *Commonwealth* v. *Turner*, 224 Mass. 229, 235, 236. *Commonwealth* v. *Wagner*, 231 Mass. 265. *Commonwealth* v. *Vona*, 250 Mass. 509. *Commonwealth* v. *Hebert*, 264 Mass. 571, 577. *Shepard* v. *United States*, 290 U. S. 96. Wigmore, Evidence (2d ed.) §§ 1438–1443. In our opinion the trial judge and the jury could have found that the condition existed which would make the declaration admissible under this rule. For this reason,

the defendant's request for a ruling that there was no evidence that the girl, at the time of the declaration, believed that her death was imminent, was properly refused.

The defendant asked other instructions with respect to the dying declaration. Two of them would require the jury to give no weight to it unless they should find beyond reasonable doubt the preliminary facts required to make it admissible. These were rightly refused. It is true that the humane though anomalous practice in this Commonwealth gives a defendant a second opportunity, after the judge has found the facts making admissible a confession or a dying declaration, to have it excluded from consideration by the jury if they do not also find those facts. *Commonwealth* v. *Reagan,* 175 Mass. 335. *Commonwealth* v. *Brewer,* 164 Mass. 577, 582. *Commonwealth* v. *Bond,* 170 Mass. 41. *Commonwealth* v. *Tucker,* 189 Mass. 457, 473–475. See also *Coghlan* v. *White,* 236 Mass. 165; *Hart Packing Co.* v. *Guild,* 251 Mass. 43, 46. Compare *State* v. *Bordeleau,* 118 Maine, 424. *State* v. *Compo,* 108 N. J. L. 499. But this practice does not change the nature of the question. It is still a question of fact preliminary to the admission of evidence, not one relating to an essential element of the crime charged. Every necessary element of the crime must be proved beyond reasonable doubt, but it does not follow that every piece of evidence must be admissible beyond reasonable doubt.

Rulings at trials have sometimes required proof beyond reasonable doubt of such preliminary facts. *Commonwealth* v. *Brewer,* 164 Mass. 577, 581. More often the quantum of proof has not been stated. *Commonwealth* v. *Burrough,* 162 Mass. 513, 514. *Commonwealth* v. *Cantor,* 253 Mass. 509, 512. *Commonwealth* v. *Madeiros,* 255 Mass. 304, 308. In other jurisdictions, proof beyond reasonable doubt has sometimes been required, for confessions (*Harrold* v. *Oklahoma,* 169 Fed. Rep. 47, 53, 54; *Whip* v. *State,* 143 Miss. 757, 764; see also *Regina* v. *Thompson,* [1893] 2 Q. B. 12), as well as dying declarations. *Regina* v. *Jenkins,* 1 L. R. C. C. 187, 192. *People* v. *Singh,* 182 Cal. 457, 476.

*People* v. *White*, 251 Ill. 67, 75. *Lipscomb* v. *State*, 75 Miss. 559, 583. *State* v. *Martin*, 76 Mont. 565, 573. But in our opinion the better view is that even in a criminal case it is enough to prove by a preponderance of the evidence the necessary preliminary facts. *Commonwealth* v. *Robinson*, 146 Mass. 571, 580–583. *Scott* v. *State*, 107 Ohio St. 475, 496, *et seq.* *Hall* v. *State*, 125 Ark. 263. *People* v. *Guido*, 321 Ill. 397, 411. *People* v. *Bartz*, 342 Ill. 56, 62. Wigmore, Evidence (2d ed.) § 2550, note 6. See also *Commonwealth* v. *Bond*, 170 Mass. 41; *Commonwealth* v. *Russ*, 232 Mass. 58, 69.

Two other requests were in substance that an untrue statement in the dying declaration would justify the jury in disregarding it altogether. Another asked an instruction that there was no evidence that any doctor or nurse informed the girl that her death was imminent. Another asked an instruction that if the girl's mind was wandering at any time during the declaration, the jury would be justified in disregarding it. Still another asked an instruction that if any statements in the declaration were suggested to the girl "by the implications in the questions put," the jury would be justified in disregarding the declaration. The judge was not required to grant any of these requests, however true the proposed instructions may have been. Charges would be endless as well as confusing if a judge could be compelled to call attention to every subsidiary fact and every possible inference. A party has no right to require the judge to argue the case for him. It is for the judge to decide to what extent he will state the evidence and discuss the possible inferences of fact that may be drawn from it. *Dahill* v. *Booker*, 140 Mass. 308, 310, 311. *Kenny* v. *Ipswich*, 178 Mass. 368, 372, 373. *Old Colony Trust Co.* v. *Bailey*, 202 Mass. 283, 291, and cases cited. *Morrin* v. *Manning*, 205 Mass. 205, 211. *Bourne* v. *Whitman*, 209 Mass. 155, 164. *Morrissey* v. *Connecticut Valley Street Railway*, 233 Mass. 554, 556. *Mahoney* v. *Gooch*, 246 Mass. 567, 571. *Buckley* v. *Frankel*, 262 Mass. 13, 15, 16.

In her dying declaration, the girl said that on April 19 she went to the defendant's drug store where the defendant gave her something to drink that made her unconscious; that it happened in the back room on the floor; that the defendant had told her he would operate for $50; and that he had not been paid, though she had made arrangements to pay him when she could. There was medical evidence that she had had an abortion, and that she had an infected uterus, such as frequently comes from a criminal operation, resulting in peritonitis. A medical expert expressed the opinion, without objection, that the abortion had been produced by an instrument. He expressed further the opinion that a mixture of whiskey and a certain drug would make one unconscious for a time, and subsequently might produce symptoms of intoxication. There was evidence that shortly after her visit to the drug store Marrano and one Van Stry met the girl on the street, in the neighborhood of the defendant's drug store, staggering, and took her to a friend's house, where she appeared to be intoxicated and was put to bed.

The defendant contends that a verdict in his favor ought to have been directed.. This point was taken improperly by request for an instruction, and also properly by motion. Rule 71 of the Superior Court (1932). But there was evidence for the jury of all the elements of the crime charged. It could have been found by inference that while the girl was unconscious on the floor of the back room of the drug store, the defendant used an instrument to produce an abortion. The requested instruction to the contrary was properly refused. Four requests relating to the sufficiency of the dying declaration or parts of it to warrant a verdict of guilty, and another relating to the sufficiency of the expert evidence that abortion was induced by an instrument to warrant a finding that the defendant used such an instrument, fall under the familiar rule that a judge need not rule upon the legal effect of fragments of the evidence. *Barnes* v. *Berkshire Street Railway,* 281 Mass. 47, 50, *et seq. Partridge* v. *United Elastic Corp., ante,* 138, 142–143. *Conrad* v. *Mazman,* 287 Mass. 229, 237.

Error is assigned because of the admission of the evidence of a medical expert that the condition of the vagina and uterus was "consistent with some instrument being pushed up in there," that a criminal operation could be performed without leaving traces of trauma or laceration, and that no physical evidence of the use of an instrument in this case was found. Of course evidence that the condition found was "consistent with" the performance of a criminal operation was no affirmative evidence to prove it. *Commonwealth* v. *Sacco,* 255 Mass. 369, 454, 455. *Commonwealth* v. *Donoghue,* 266 Mass. 391, 396. *De Filippo's Case,* 284 Mass. 531. But it was nevertheless admissible, to meet the argument that the lack of physical traces showed that no such operation had been performed.

Error is also assigned to the ruling that on cross-examination the defendant might be asked whether he knew that a catheter could be used to produce an abortion, to which he answered in the affirmative. The Commonwealth contended that some instrument was used, and of necessity the instrument had to bear some resemblance to a catheter, such as the defendant kept and sold in his drug store. The knowledge of a defendant as to the method by which the crime charged was committed, is commonly received in evidence, to place the defendant within the class of persons who could have committed the crime. *Commonwealth* v. *Kosior,* 280 Mass. 418, 421, 422. *Commonwealth* v. *Porfidio, ante,* 61. Wigmore, Evidence (2d ed.) §§ 83, 221, 413. The bounds of permissible cross-examination were not broken.

The last error assigned is the denial of the defendant's motion for a new trial. As was said in *Commonwealth* v. *Osman,* 284 Mass. 421, 426, "the questions presented by the motion for a new trial were either questions of discretion for the trial court in its superintendence of the work of the jury, or questions of law which could have been raised or in fact had been raised at the trial. It is settled that a trial judge need not allow a party to reserve such questions of law for presentation for the first time upon a motion for a new trial, or to revive and renew them upon such a motion." We find no abuse of discretion in the denial of a new trial.

*Mantho* v. *Nelson*, 285 Mass. 156. *Commonwealth* v. *Bader*, 285 Mass. 574, 577. *Menici* v. *Orton Crane & Shovel Co.* 285 Mass. 499. *Skudris* v. *Williams*, 287 Mass. 568. *Restuccia* v. *Bonner*, 287 Mass. 592, 593.

*Judgment affirmed.*