## PARKER v. BAMBERGER, et al.

No. 6178.   Decided August 21, 1941.   (116 P. 2d 425.)

Rehearing granted August 29, 1941.

362

*Irvine, Skeen & Thurman,* and *A. U. Miner,* all of Salt Lake City, for appellants.

*Wendell B. Hammond,* of Bountiful, and Homer Holmgren and *Rex J. Hanson,* both of Salt Lake City, for respondent.

McDONOUGH, Justice.

In an opinion heretofore handed down by this court, appellants' bill of exceptions was ordered stricken on the ground that Sec. 104-39-4, R. S. U. 1933, requires that a proposed bill must be presented to the judge for settlement within ten days from the date amendments are proposed by the adverse party or if no amendments are thus proposed, within ten days from the date the adverse party agrees that the bill may be settled as proposed. That decision is reported in, Utah, 101 P. 2d 372. Appellant petitioned for a rehearing on the ground that respondent's motion to strike, because it was directed at failure to settle the proposed bill in time rather than at presentation thereof in compliance with the statutes, had misled counsel and hence they were not accorded a fair opportunity to argue the point upon which the ruling was made or to call to the court's attention cases holding contrary to our conclusion. Pursuant thereto a rehearing was granted in order to permit counsel to brief and argue the question whether Sec. 104-39-4, prescribes any definite time limit for presenting the proposed bill of exceptions to the trial judge where no amendments are proposed or offered by the adverse parties. Appellants' contention is that it does not. If such contention is correct, the bill of exceptions was improperly stricken and we should now reexamine the case, considering the bill of exceptions and the assignments of error predicted thereon.

For the convenience of the reader the statute, so far as material, is again set out:

104-39-4. "(3) Such draft [proposed bill of exceptions] must contain all the exceptions taken upon which the party relies. Within ten days after such service the adverse party may propose amendments thereto, and serve the same, or a copy thereof, upon the adverse party. *The proposed bill and amendments must, within ten days thereafter,* be presented by the party seeking the settlement of the bill to the judge who tried or heard the case, upon five days' notice to the adverse party, or be delivered to the clerk of the court for the judge. When received by the clerk he must immediately deliver them

to the judge, if he is in the county; if the judge is absent from the county and either party desires the papers to be forwarded to the judge, the clerk must, upon notice in writing from such party, immediately forward them by mail or other safe channel; if not thus forwarded, the clerk must deliver them to the judge immediately after his return to the county. When received from the clerk the judge must designate the time at which he will settle the bill, and the clerk must immediately notify the parties of such designation. At the time designated the judge must settle the bill. If no amendments are served, or if served are allowed, the proposed bill may be presented, with the amendments, if any, to the judge for settlement without notice to the adverse party." (Italics added.)

Appellant has cited several cases not heretofore called to our attention to support the contention that under the provisions a proposed bill of exceptions where no amendments are proposed need not be presented to the court for settlement within ten days. The case of *Houghton* v. *Superior Court*, 128 Cal. 352, 60 P. 972, 973, involved the California statute from which the statute here involved was taken. In determining that there was no specific time limit within which to present a proposed bill where no amendments are offered, the court said:

"Respondent contends that it is still to be presented within 10 days, and that the only difference in the case, where amendments are proposed and where there are none, is that in the last case notice is not required. But this construction is impossible. When amendments are served the bill and amendments must be presented within 10 days 'thereafter.' The word 'thereafter' can refer to no point of time in case of nonproposal of amendments. The last day upon which amendments could be proposed is not expressly mentioned in the section, and cannot, therefore, be pointed at by the adverb of time."

In addition to pointing to the reasoning therein, counsel here contend that the statute was adopted in this state as thus construed by the California court. In this contention they are in error. The cited California case was decided in 1900. The statute, in so far as its phraseology is pertinent to the present discussion, was in force in this jurisdiction since at least 1898. See § 3286, R. S. U. 1898.

However, the reasoning upon which the decision in that case is based, and the subsequent recognition in California of the validity of the construction of the statute involved together with decisions in Idaho and Montana construing the same wording about which the controversy here revolves in statutes of similar import, are persuasive. See *Gay* v. *Torrance*, 143 Cal. 14, 76 P. 717; *Burns* v. *Napton*, 26 Mont. 360, 68 P. 17; *Woodard* v. *Webster*, 20 Mont. 279, 50 P. 791; *Coast Lumber Co.* v. *Wood*, 18 Idaho 28, 108 P. 338.

In our former opinion we adopted such construction of the statute as we believed consonant with the other provisions of the Code of Civil Procedure relative to steps to be taken and the time thereof in perfecting appeals, a construction which prescribed a specified time within which such step must be taken; thus avoiding indefiniteness on the one hand and requiring expedition on the other. In effect we pointed the word "thereafter," construed by the California court as referring to the time of serving amendments, to the antecedent action of the adverse party, or the expiration of the time fixed for such action "thereafter," to-wit, after the service of amendments, or the expiration of the time for service thereof, or the action of the adverse party whereby it is indicated that no amendments are to be proposed. This construction necessitates reading the sentence wherein the word appears:

"The proposed bill and amendments [if any] must, within ten days *thereafter*," etc. (Italics added.)

The inserted words "if any" would of course be added if the context required. But in construing a statute literalness is the point of departure. We must, hence, first regard the statute with such words omitted. Thus read, only the "bill and amendments" must be presented within ten days. This is in harmony with the construction for which appellants contend. Too, it must be conceded that in looking for the word or phrase to which the word "thereafter" refers we are clearly directed to the words "the adverse party may

propose amendments thereto, and serve the same * * * upon the adverse party." Thus, the last act mentioned in the sentence preceding the one in which the word "thereafter" is used is the proposal and service of amendments within ten days, after which the proposed bill and amendments must be presented to the judge. Unless the interpretation indicated by the structure of such successive sentences is to be rejected, because of the import of the statute in its entirety, we should adopt it.

On the other hand, the statute provides that "the proposed bill and amendments" must within ten days after service of the amendments be presented by the party seeking the settlement of the bill to the judge or the clerk for the judge. This is true, if the wording be literally followed, though the amendments are allowed, since the last sentence of the subsection provides only that as to a bill where the amendments are allowed notice of time of settlement need not be given. There would seem to be no more reason for fixing a ten day limit after proposal of amendments which are allowed by the party seeking settlement of a bill, than where no amendments are proposed, since in the former case the amendments, accepted by the proposing party are as much a part of the bill to be offered for settlement as though contained in the bill as originally proposed.

To construe the provision so as to make the procedure to be followed the same in the case where proposed amendments are allowed and where none are proposed, there must be read into the statute the words: "if not allowed," to read thus: "The proposed bill and amendments [if the latter are not allowed] must, within ten days thereafter, be presented," etc. Supporting such construction in addition to the gramatical structure of the provision, the cases cited point out that it is only where a contest relative to settlement of the bill is to be decided by the court that the procedure relative to settlement therein prescribed is pertinent; and finding no limitation in the statute relative to presentation of a bill where no amendments are proposed, or if proposed are allowed, prescribe a reasonable time therefor.

After a fuller consideration of the argument in favor of the construction contended for by appellants, we are constrained to adopt it and to withdraw our former opinion thereon. We reach this conclusion the more readily since the only cases deciding the precise point support it and, absent a specific construction by this court, counsel in perfecting an appeal may well have heretofore relied thereon. Furthermore, definiteness of procedure is by such construction attained quite as well as that indicated by our former opinion; and the reason of expedition therein argued may well be taken care of by a requirement prescribing that a reasonable time only be permitted for presentation of a bill where no amendments are proposed.

So concluding, our former ruling is withdrawn and the motion to strike the bill of exceptions is denied.

We proceed, therefore, to a consideration of the merits of the appeal.

Appellants have assigned 55 alleged errors, which for the sake of convenience may be condensed into four categories: (1) alleged error of the trial court in admitting certain evidence; (2) alleged error in the giving of certain instructions to the jury; (3) alleged error in failing to give certain requested instructions; and (4) alleged error in failing to direct a verdict for appellants.

This action was commenced on behalf of the infant daughter and sole heir of Paul Jacob Parker, deceased, who died as a result of injuries received when an automobile in which he was riding as a guest was struck by a train operated by the appellant railroad company. Excluding those allegations of negligence which were by the trial court taken from the jury, respondent in his complaint alleged that appellants were negligent in two particulars, as a result of which the accident occurred causing Parker's death. They are: (1) that the train "was operated at a high and excessive rate of speed, having due regard to the conditions and circumstances as they existed at said crossing as heretofore described"; and (2) that appellants "failed and

neglected to keep the wig-wag signal at said crossing in proper repair so that the same would operate properly and give reasonable warning of the presence of a train upon the tracks in the immediate vicinity of said crossing."

With respect to the second alleged act of negligence, the trial court, over objection of appellants' counsel, permitted evidence to be introduced as to various failures of the wig-wag signal to operate on occasions prior to the accident. Certainly such evidence was material to show ■ a defective signal device, as well as to show the probability of the company having notice of such defect. Appellants themselves introduced evidence to show that the device was not defective and that it was kept in proper repair, thus creating a conflict in the evidence on this point. But evidence of failures of the wig-wag to operate in the past was material to show such a defective condition of the signal as might explain its operation on occasions testified to by appellants' witnesses and failure to operate on other occasions, testified to by respondent's witnesses. Under the allegations of the complaint and the issues in the case all such testimony with respect to the wig-wag signal tending to establish that it was defective and failed to operate at the time of the accident and that the company knew or should have known of such defective condition was properly admissible. The evidence here complained of was of such a nature and therefore admissible. *Sargent* v. *Union Fuel Company*, 37 Utah 392, 108 P. 928.

Appellants objected to the court's giving instructions 13½, 17, 18, 20 and 25. Instruction No. 13½ deals with the alleged defective wig-wag signal and its failure to operate. The court instructed the jury that if the company had failed to use ordinary care to keep the ■ wig-wag signal in good repair *and* if said signal failed to operate at the time of the accident the company would be guilty of negligence. We have already dealt with the evidence on this point, which evidence we held to be admissible as tending to show a defective signal device.

But appellants urge that it was error to include in the instruction the alleged failure of the device to operate at the time of the accident for the reason that this was not alleged as a ground of negligence.

We think this position not tenable. By paragraph 6 of his complaint, plaintiff respondent alleged that at the time of the accident defendants had negligently and carelessly allowed the signal to become out of repair and that at the time of the accident the signal gave no warning sound by ringing its bell or any warning signs by swinging its pendulum; that it had been out of repair for a long time prior thereto; that the defendant had notice thereof and negligently failed to repair it. By paragraph 8, it was alleged that the accident was caused by the negligence of the defendants in several particulars. Among them was that "defendants failed and neglected to keep the wig-wag signal at said crossing in proper repair so that the same would operate properly and give reasonable warning of the presence of a train upon the tracks in the immediate vicinity of said crossing." While plaintiff might have alleged more specifically that the failure of the device to operate was a proximate cause of the collision and that its failure to operate was ascribable to defendants' negligence, we are of the opinion that the allegations of paragraph 6 and 8 were sufficient to charge the actionable negligence thereby clearly attempted to be charged, and that such allegations were sufficient to permit evidence to be introduced and the issue raised thereby to be submitted to the jury.

As to instruction No. 17, the court instructed the jury concerning the failure of the signal device to operate on prior occasions, stating that evidence of such a failure was not introduced "for the purpose of showing any liability * * * beyond this case" but only as to whether the device was defective or out of order at the time of the accident. What we have said above amply covers this point. Such instruction was not error.

In instruction No. 18 the court presented to the jury the issue of whether the train was being operated at such a high and excessive rate of speed as was not reasonable and prudent under the circumstances. It was objected to on the ground that there was no evidence that the train was operated in such a manner. We have examined the record carefully and have found some evidence to the effect that the train was being operated at an excessive and unreasonable rate of speed under the circumstances at the time of the accident. There was also evidence that the train was being operated in a reasonable and prudent manner and approached the crossing at a slow rate of speed, but such evidence presented a conflict which under the instruction was properly put to the jury for their consideration.

The objections to instruction No. 20 are twofold: (1) the first part of said instruction, while stating a correct principle of law, was inapplicable to the facts involved in this case and presented to the jury the question whether the driver of the vehicle in which deceased was riding was negligent, it appearing from the undisputed evidence that the driver of the vehicle was negligent; and (2) the latter part of the instruction was misleading as to whether appellants' negligence, if any, would permit recovery without regard to causal connection with the accident.

As to the first point, it is error for the trial court to give an instruction, though such instruction correctly states the law, on a matter extraneous the issues and evidence of the case. Here, however, the issue as to the driver of the car in which deceased was riding being negligent and as to whether such negligence was the sole proximate cause of the accident was raised by the pleadings. By the first part of instruction 20 the court stated to the jury under what circumstances the driver would be negligent in driving onto defendants' tracks. By instruction 23 the jury was specifically instructed that said driver was guilty of negligence as a matter of law.

Respondent contends that since the trail court, by instruction No. 23, took from the jury the question of the negligence of the driver of the automobile, any error committed in the first part of instruction 20, which though on an issue properly withdrawn, correctly ■ stated the law, was not prejudicial. We agree with such contention. The jury, in considering the two instructions, could not reasonably have found the driver free from negligence. The giving of such instruction was not prejudicial to defendants. See *White* v. *Pinney*, 99 Utah 484, 108 P. 2d 249.

The latter part of Instruction 20 reads as follows:

"* * * such negligence of the driver would not prevent the plaintiff from recovering in this action unless you find that the defendant railroad company was not guilty of negligence in any of the particulars alleged in the plaintiff's complaint and so come to the conclusion that the accident was due solely and entirely to the negligence of the driver of said automobile."

While this instruction does not state specifically that the negligence of the railroad company, if any, must have been a contributing cause of the accident, it does state that the jury must find for the defendant if the accident "was due solely and entirely to the negligence of ■ the driver of said automobile," thereby requiring that a causal connection between the negligence of the railroad company and the accident before respondent could recover. This requirement is specifically set forth in instruction No. 24, where the court stated that it was not sufficient to justify recovery by the plaintiff, merely to find that the railroad company was negligent in one or more of the particulars alleged, but that it was also necessary to find from a preponderance of the evidence "that such negligence * * * was either the sole proximate cause of the collision or was a contributing proximate cause of the collision along with the negligence of Wayne Cole," the driver.

In view of all of the instructions given, we cannot say that appellants were prejudicided by the court's giving instruction No. 20.

Instruction No. 25 is objected to on the ground that the court permitted the jury to consider "the probability of said deceased acquiring an estate during his lifetime which the said minor daughter would inherit" when there was no evidence "bearing on such matter." The record contains evidence of deceased's work, amount of salary received, nature of work, life expectancy, etc., all of which could be considered in determining whether an estate might be acquired in which the daughter would participate.

The court refused to give certain requested instructions. But without considering each separately we conclude that under the circumstances of this case and in view of what has heretofore been stated there was no error in such refusal.

Appellants have listed fifteen different reasons why the trial court should have directed a verdict in their favor. We have heretofore considered the alleged negligence of appellants (1) in failing to keep the wig-wag signal in a proper state of repair in consequence of which it failed to operate at the time in question, and (2) in operating the train at an excessive and unreasonable rate of speed under the circumstances. As to both allegations there was a conflict in the evidence, the weight of which we cannot review in a law case such as this. *Evans* v. *Denver & R. G. W. R. Co.*, 74 Utah 201, 278 P. 809; *Russell* v. *Borden's Condensed Milk Co. of Utah*, 53 Utah 457, 174 P. 633. After carefully reading the record we conclude that the evidence was sufficient to present the issue of appellants' negligence to the jury. The trial court therefore properly refused to direct a verdict.

Nor did the court err in refusing to grant a new trial on the ground that the verdict of the jury for $5,000 was excessive. The jury was not limited to what deceased

was by law required to give his daughter during her 12, 13 minority.

It, therefore, follows from what has been said above that the judgment of the lower court should be affirmed on the merits. It is so ordered. Costs to respondent.

WOLFE and LARSON, JJ., concur.

MOFFAT, Chief Justice (concurring in part and dissenting in part).

While I concur in the results reached by the prevailing opinion on the merits of this case, I nevertheless feel that our decision heretofore rendered in this case (reported in, Utah, 101 P. 2d 372) should be affirmed with respsect to the time within which a proposed bill of exceptions, with or without amendments, should be presented to the trial court for settlement.

I cannot agree that the word "thereafter" contained in the statute ( § 104-39-4, R. S. U. 1933) can refer to no point of time where no amendments are proposed by the adverse party, or if proposed are allowed. Certainly there is just as much a point of time from which the ten-day period, for presentment of the proposed bill to the judge, may commence in the case where no amendments are proposed, or if proposed are allowed, as in the case where there are amendments. In either case the adverb "thereafter" refers to the time when the party on whom the proposed bill has been served acts, either by stipulation that the proposed bill may be settled without amendments (as was done in the present case) or by proposing certain amendments and serving the same on the other party. Or, if he does not act in either of the above ways, the ten-day period should commence when the proposed bill is again returned to the person proposing it.

I do not think the California case of *Houghton* v. *Superior Court*, 128 Cal. 352, 60 P. 972, 973 and others cited in the prevailing opinion, are persuasive of the position therein

taken. In commenting on the language of a California statute similar to the one here involved, the court in the Houghton case said:

"It is there provided that, *if amendments to the bill are proposed,* the bill and amendments proposed must be presented to the judge within 10 days thereafter, on 5 days' notice to the adverse party, or to the clerk of the court for him; but if no amendments are proposed, or, if proposed, they are acceded to, the statement may be presented to the judge without notice. *Within what time is not stated.*" (Italics added.)

The italicized portions of the above quotation are conclusions of the court and nowhere appear expressly in the statute. I believe the wording of our statute requires a different construction. It expressly reads:

"Within ten days * * * the adverse party may propose amendments * * *. The proposed bill and amendments must, within ten days thereafter, be presented * * * to the judge * * * upon five days' notice to the adverse party, or be delivered to the clerk of the court for the judge."

Then at the end of the section is contained an exception to the requirement of five days' notice to the other party.

"If no amendments are served, or if served are allowed, the proposed bill may be presented, with the amendments, if any, to the judge for settlement without notice to the adverse party."

But no other exception is contained in the section, either as to time or manner of presentation of the proposed bill. The conclusion thus resulting is that by excepting from the requirement of five days' notice to the adverse party only situations where there were no amendments proposed or where, if proposed the amendments were accepted, the legislature must have intended that in all other particulars mentioned there would have to be a compliance with the terms of the statute, even though no amendments were offered to the proposed bill, or if offered said amendments were accepted by the other party.

It is contended, however, that the provisions of the subsection involved have application only where amendments are proposed and not accepted by the other party. If such construction were given the statute, there would be no provision as to procedure in case no amendments are proposed or if proposed are accepted. True, the statute does say that in such case the proposed bill and amendments, if any, "may be presented * * * to the judge for settlement without notice to the adverse party," but without the other provisions of the sub-section, which under appellant's theory would not be applicable, there is no provision giving the right (1) to deliver the proposed bill to the clerk for the court, or (2) to have the proposed bill forwarded to the judge if the latter is out of the county, or (3) to have the court designate the time he will settle the bill or any notice thereof, or (4) to have the court settle the proposed bill after the same is presented.

Nor do I see how it can be argued that under the wording of the statute a proposed bill with amendments which have been accepted is not included within the terms of the statute, when the wording of the statute expressly includes it. The statute certainly makes no differentiation between a proposed bill with amendments which are objected to and a proposed bill with amendments which are accepted, except that in the latter case no notice to the adverse party need be given in presenting it to the court. It specifically states, "The proposed bill *and amendments* must, within ten days thereafter," etc. (Italics added.) The wording of the statute contemplates that whether or not amendments are proposed the bill as proposed must be presented to the court (or the clerk) within ten days (1) from the date amendments are proposed or (2) from the date it is determined no amendments are proposed.

As pointed out above, as well as in our former opinion, there are very definite reasons why there should be a time limit on the presentation to the court of a proposed bill, irrespective of any proposed amendments. The language

of the statute is susceptible of such an interpretation. I therefore wish to adhere to our former decision to the effect that the proposed bill, in the instant case, was not presented within the time allowed by the statute and the trial court therefore should have refused to settle the same. To construe that there is no limitation in the statute and then suggest that a reasonable time should be prescribed is adding to the confusion. Must there be a determination in every contested case that the bill was presented within a reasonable time?

The Utah case of *Love* v. *St. Joseph Stock Yards Co.*, 51 Utah 305, 169 P. 951, is distinguishable and hence not applicable. The question involved in the Love case was whether the delivery to the clerk of a proposed bill of exceptions for the purpose of having the same signed by the judge was sufficient, the court holding that it was.

PRATT, J., dissents.