UTAH FUEL CO. v. INDUSTRIAL COMMISSION et al.

No. 6445.   Decided June 18, 1942.   (126 P. 2d 1070.)

See 28 R. C. L., 828 (8 Perm. Supp. 8252) ; 71 C. J. S., Workmen's Compensation Acts, sec. 929.

*H. J. Binch,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *Marl D. Gibson,* of Price, for defendants.

WOLFE, Justice.

Certiorari to the Industrial Commission to review an order awarding compensation to the widow and five children

of Lyman C. Jensen, deceased. The Utah Fuel Company, petitioner herein, is a self insurer under the Workmen's Compensation Act, Rev. St. 1933, 42-1-1 et seq.

Lyman C. Jensen, deceased, was an employee of the petitioner. He entered into employment with petitioner in September, 1940, at which time he submitted to a "whole physical examination" and was employed. On January 3, 1941, deceased, while prying down some top coal in the course of his employment, stood upon a saw horse, or a box placed on a saw horse, which slipped causing him to fall and strike his right testicle on the bar he was using, or on a piece of coal.

Upon returning home that afternoon deceased complained to his wife of the pain and she observed a bruise on his right testicle. The deceased saw Dr. Long, the company doctor, that evening or the evening of January 4, 1941, there being some conflict as to these two dates. In his report, Dr. Long stated "contusion of the right testicle." The deceased Jensen continued work without loss of a working day, but on January 14, 1941, the pain became so severe he was forced to stop work. He was sent to the hospital February 1, 1941, and died on May 3, 1941. An autopsy was performed and the cause of death was diagnosed as "primary carcinoma of right testicle with carcinomatosis."

The Industrial Commission found in favor of the applicants on the following three issues:

"First, did the deceased suffer an accidental injury? Second, did the accident arise out of or in the course of his employment? Third, did the accidental injury cause the death of the deceased or did it aggravate and accelerate a pre-existing condition which resulted in the death of the deceased?"

This court cannot say that the Commission erred in finding that the deceased suffered an accidental injury, nor that the accident arose out of or in the course of his employment. It is not the duty nor the right of this court to say what inferences or conclusions must be drawn from the facts as long as there is competent evidence

to sustain them. This proposition has been reiterated so often in numerous decisions that further citation of cases is unnecessary.

In the instant case there is observation evidence as to the presence of a bruise or "contusion" on the right testicle. Mrs. Jensen and Dr. Long testified as to the presence of such a bruise. There is competent evidence in the form of statements by the deceased to Dr. Long made in connection with the pain as to how he contracted the injury. The employer's first report, and Dr. Long's report both stated the injury occurred January 3, 1941, 11:30 A. M., No. 2 Mine, 3rd left. Furthermore, liability was admitted by the employer until the seriousness of deceased's illness was determined, approximately one month before his death, when liability was then denied.

As the commision indicated in its findings, the deceased was probably suffering from carcinoma at the time of the trauma. Dr. Ogilvie's testimony establishes the cause of the death of the deceased as "primary carcinoma of the right testicle with carcinomatosis," but as to the question of the injury accelerating the pre-existing cancerous condition, the doctor refused to speculate, stating that "sometimes trauma greatly accelerates the growth of cancer but sometimes it does not." The medical profession has been unable definitely to determine the cause and cure of cancer. The profession is hesitant to make any positive statements concerning it. We have here a situation in which the deceased received an injury to his right testicle. Swelling and pain immediately developed which became progressively worse, ending with the death of the deceased. The circumstantial evidence indicates that the injury aggravated and accelerated the cancerous condition contributing to the death of the deceased. This is the more probable and rational explanation of the factors leading up to the death of the deceased.

In *Silcox* v. *Industrial Commission,* 101 Utah 438, 121 P. 2d 901, a most favorable interpretation of the testimony of

the doctors for the applicant revealed a conflict of that testimony as to the fact of whether the disability was caused by the accident or due to an arthritic condition. Such being the case, the conflict was for resolution by the Commission even though the beginning of the disability was traceable to a definite event. We there upheld the finding of the Commission. In this case there is no medical evidence on the question of whether the effect of the blow accelerated the pre-existing condition; the doctors refusing to spectulate but the Commission drew the inference that there was a definite connection between the blow and the acceleration of the condition, because apparently the acceleration did begin with that event. And here again we uphold the Commission. The case of *Chief Consolidated Mining Co.* v. *Salisbury,* 61 Utah 66, 210 P. 929, 930, is not necessarily in conflict with this view. While the decision does not state what the nature of the accident was which it was claimed accelerated a chronic disease of the heart, the record reveals that it was a definite event, to wit, a slipping and wrenching of the muscles of his right side and a bruising and straining of the muscles of his right chest wall in trying to stop the fall. The opinion states that there was

"no positive statement that in the judgment of the experts testifying it did or could have [accelerated the heart disease]."

The physicians testified that the accident could or might have had that effect. We do not think it is necessary for an applicant to procure a doctor who will make a positive statement where it is obvious that no positive statement could be expected. Even doctors have no television of the pathological history of the inside of a man. When the event of accident is definite and injures a particular member or part of the body and afterward disability or death occurs and the progression toward disability or death can definitely be ascertained as beginning with the former event because the history of the progression directly involves a worsening

of the member or part to which the injury occurred or the evidence involves a connection between the trauma and other affected parts in the history of the progressive worsening, there will be sustaining evidence for an award. In the Salisbury case there was no evidence of an injury to the heart at the time of the accident but an injury to the muscles of the chest wall. In addition the death took place nearly six months after the injury and the decedent who before the accident had been suffering from a chronic disease of the heart, and high blood pressure, had gone back to his work for a period of time. The court held that where

"there is no positive or direct statement on the part of any of the physicians testifying that in their judgment the accident did accelerate the disease which caused death or that it was in any way responsible for the death,"

there was no substantial competent evidence to support the award, although there was evidence that it might have had that effect. The court observed that all the physicians had testified that sooner or later the heart condition must naturally result in death. In that case there was no opinion of the physicians that the accident did accelerate the chronic heart disease. They only went so far as to say it might have done so. Therefore, the event of the accident could be connected with the event of the death, according to the view of this court then took of the matter, only by conjecture, and not by evidence. This court in that case went on to say

"nor is there any fact proven from which it might legally or reasonably be deduced that the accident did accelerate the disease."

In this case there are such facts. The specific member was injured and from that time on grew progressively worse until death.

If, as in the Silcox case, supra, there is a doubt introduced by a conflict of testimony, medical or otherwise, as to whether the accidental event was the cause of the disability, the decision of the commission as a resolution of that doubt will be sustained, unless it ap-

pears to be so apparently against common sense as to be arbitrary. For a case very similar to this see *Swiderski* v. *W. J. Rainey, Inc.,* 114 Pa. Super. 221, 173 A. 458.

We cannot say that the Commission was not justified in inferring that the trauma accelerated the cancerous condition contributing to the death of the deceased, although an opposite finding could have been made. Where two conflicting inferences might reasonably be drawn, this court will not reverse a decision which "adopts the more probable of the two." *Southern Pac. Co.* v. *Industrial Commission,* 96 Utah 510, 87 P. 2d 811; *Columbia Steel Co.* v. *Industrial Commission,* 92 Utah 72, 66 P. 2d 124.

The finding of the Commission is based on reasonable conclusions legally deducible from the proven facts and it follows that the award of the Commission must be affirmed with costs. Such is the order.

MOFFAT, C. J., LARSON and McDONOUGH, JJ. and LESTER A. WADE, District Judge, concur.

PRATT, J., on leave of absence.