292 P.2d 849

**Alfred Roger MOORE, Plaintiff and Respondent,**

v.

**The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, Defendant and Appellant.**

**No. 8284.**

Supreme Court of Utah.

Jan. 30, 1956.

Van Cott, Bagley, Cornwall & McCarthy, Clifford L. Ashton, and Grant Macfarlane, Jr., Salt Lake City, for appellant.

Rawlings, Wallace, Roberts & Black, Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

Respondent was awarded judgment upon a verdict in the net amount of $17,500 in a suit brought under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

In his complaint, respondent prayed damages for injuries to his back and nervous system, including a "ruptured intervertebral disc in the lower lumbar region of his spine." To prove this injury, he introduced the testimony of a doctor who examined him for the purpose of trial and not for the purpose of treatment. The doctor testified that his first examination revealed a slight muscle spasm in the small of the back, a slight sensory loss on the lateral side of the right foot, and some limitation of muscle flection. His second examination disclosed some improvement—there was less muscle spasm and the respondent's movements were more free. X-rays showed a slight narrowing of the lumbar sacra joint, which, the doctor admitted, might appear in an entirely normal back. On the basis of this evidence, plus the history of pain as given him by respondent, he concluded that there was a nerve irritation, and that *it was possible* that the accident initiated the condition and, when queried about his opinion as to what was causing the nerve irritation, he testified:

"Again it is a possibility. It is my opinion that this is possibly due to pressure on the nerve in the lower spine, due to irritation from a disc."

Counsel for appellant objected that such "possibilities" are not probative, but the trial court denied his motion to strike the testimony. The doctor's estimate of 5% permanent disability was based in part on the predictability of exacerbation and remission of pain over a long period of time, which is characteristic of disc injuries. This was the only evidence offered concerning the existence of a disc injury and counsel for appellant requested an instruction taking the consideration of a ruptured intervertebral disc from the jury on the basis that no competent evidence on this matter had been given. This instruction was refused, although the court avoided any mention of a disc injury in all other instructions.

It is not here suggested that the doctor's testimony was incompetent, although the phraseology of the requested instruction might indicate that to be the position of appellant. Appellant argues that the testimony of the doctor, guarded in expression as it is, and based in large part upon subjective symptoms related by respondent, is insufficient to provide a question of the existence of an injured disc for the consideration of the jury, and hence, the trial court erred in failing to instruct to that effect. It is, of course, possible that the jury in assessing the award considered merely the

doctor's positive assertion of the existence of a "nerve irritation," but his testimony as to the permanency of disability was linked to the possibility of a disc injury and a discussion of disc injuries, including diagrams, occupied a considerable portion of evidence offered through him, thus impressing the jury with the seriousness of such a condition. Under these circumstances, if the proof of such an injury falls short of that required under our law, then an instruction to that effect should have been given the jury.

This court has long recognized that the mere use of words such as "belief," "impression," "probability," or "possibility" will not *exclude* a witness' testimony where his expression does not indicate a lack of personal observation, but merely the degree of positiveness of his original observation of the facts or the degree of positiveness of his recollection; Jackson v. Harries, 65 Utah 282, 236 P. 234; Picino v. Utah-Apex Mining Co., 52 Utah 338, 173 P. 900; Utah Fuel Co. v. Industrial Commission, 102 Utah 26, 126 P.2d 1070; and further that the words must be taken within the context of the testimony in determining the meaning and value of the evidence; Jones v. California Packing Corp., Utah, 244 P.2d 640. Likewise, this court has approved the giving of an instruction allowing the jury to assess damages for such results of the defendant's wrong as plaintiff *will probably suffer* in the future. Picino v. Utah-Apex

Mining Co., supra; Kirchgestner v. Denver & R. G. W. R. Co., 118 Utah 20, 218 P.2d 685. Respondent argues that the liberal policy thus adopted by this court is an express repudiation of the doctrine of torts that recovery may be had for such injurious consequences only as are reasonably certain. It is, however, clear from a reading of all the cases cited supra that the plaintiff retains his burden of proving his damages by competent evidence to an extent where the trier of the fact might discover that which is probably true, having regard for the certainty or uncertainty which is more or less inherent in every issue of fact.

A comparison of these cases with Chief Consolidated Mining Co. v. Salisbury, 61 Utah 66, 210 P. 929 demonstrates the point at which the total evidence introduced tends to show a probability upon which damages may be awarded as opposed to mere conjecture. The Salisbury case is very similar to the present case in that the doctor's testimony was that the accident "might have" or "could have" accelerated heart disease; there being no other evidence than this, the court held that an award based upon such speculative evidence must be annulled. The other Utah cases cited supra, as well as the cases from other jurisdictions cited by respondent in his brief, contain additional credible evidence of either medical or non-medical character.

We agree with counsel for respondent that the evidence of some injury was suf-

ficient to go to the jury, and we agree that the distinction between probability and possibility should not follow too slavishly the witness' choice of words. However, in the instant case, the jury was allowed to speculate upon the existence of a disc injury, which may be determinative of the important element of permanency of the injury when no affirmative evidence was offered on this issue. Although the medical testimony indicated that the symptoms showed a nerve irritation, and that such symptoms were consistent with the existence of a disc injury, we cannot discover in the witness' words anything more than their corollary that, under the circumstances, a disc injury was not impossible. See Commonwealth v. Polian, 288 Mass. 494, 193 N.E. 68, 96 A.L.R. 615.

Where, in another case, it might appear patent to the jury that certain evidence is not probative, an instruction to that effect might be unnecessary since its obviousness renders it harmless. In the case at bar, the plaintiff prayed for damages for a ruptured disc; the medical expert offered a learned and convincing discourse on ruptured discs; and some injury to the back was shown. The likelihood that the jury considered permanent injury as though it were proven by the expert testimony is strongly indicated and, therefore, an instruction should have been given to cure a possible prejudice. The case is reversed and remanded for a new trial.

Two instructions, requested by respondent, were given the jury, although they are outside the issues of the trial. There is no question but that the statements of law contained in each were correct, but this court has held that where the instruction is extraneous to the issues and evidence of the case, it is error for the trial court to give it. Parker v. Bamberger, 100 Utah 361, 116 P.2d 425. Instruction No. 12 charged the jury:

"That at the time of the occurrence involved in this case, plaintiff, Alfred Roger Moore, and defendant were mutually engaged in interstate commerce.

"Under such circumstances the statutes of the States of Utah and Colorado covering employers' liability and workmen's compensation are not applicable to this case and plaintiff's right to recover, if any he has, is based solely on the Statutes of the United States covering the liability of common carriers by railroad to their employees for injuries caused while in the course of their employment."

Respondent's counsel informs us that in many cases where he has represented plaintiffs in F.E.L.A. cases, members of the jury have asked him why his client has not pursued his remedy under the Workmen's Compensation Law, U.C.A.1953, 35–1–1 et seq., and that it was to prevent prejudice in the jury's estimation of his client that he requested this instruction. It is obvious

that an attempt to exclude all possible considerations from the individual thinking of the jurors which may influence the verdict would be an impossible task and result in instructions so numerous that the only result could be complete confusion. A similar instruction to this was discussed in the case of Bruner v. McCarthy, 105 Utah 399, 142 P.2d 649, the court stating that the source of the law was not necessarily a concern of the jury. The Bruner case also discussed an instruction of the same import as Instruction No. 13 given in the present case:

"The Federal Employers' Liability Act provides as follows:

"That in any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to * * * any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury * * resulted in whole or in part from the negligence of any of the officers, agents or employees of such carrier * * *."

In the present case, as in the Bruner case, no issue of assumption of risk was raised by the pleadings or the evidence and no good purpose could have been served by the giving of such an instruction.

In some cases, it is conceivable that both or either of the instructions might be proper and necessary to dispel improper inferences from pleadings and evidence. Likewise, in other cases, the prejudice resulting from the giving of such instructions where they were unnecessary might be more capable of definition than in the present case. Ellis v. Union Pacific R. Co., 148 Neb. 515, 27 N.W.2d 921. It is unnecessary for us to determine whether, under the facts of this particular case, the giving of these instructions constituted reversible error since the case is reversed on other grounds. The instructions were improper and should not be given in the new trial granted under this opinion.

Reversed and remanded for a new trial. Costs to appellant.

HENRIOD and WORTHEN, JJ., concur.

CROCKETT, Justice (concurring in the result).

I am unable to agree that the trial court committed prejudicial error regarding the instructions.

The evidence is admittedly sufficient to support the finding that the defendant was negligent and that the plaintiff was injured in connection with the loading of the wheel.

The principal attack upon the judgment and the basis of reversal is that the court erred in refusing to give defendant's requested instruction No. 12 to the effect that, " * * * no competent evidence

has been received upon which you could base a finding that the plaintiff sustained a ruptured intervertebral disc * * *. Therefore, you will disregard the contention made by the plaintiff that he sustained a disc injury * * *"

This contention is based upon the reasoning that the only evidence referring specifically to a ruptured disc was that of Dr. Clegg who could not testify concerning it with any degree of certainty. However, he explained that, "In medicine, * * * we cannot come out definitely on things, very often and say absolutely * * * but we usually qualify our diagnosis * * I cannot say definitely that this is probable or definitely that it is. It is just a possible condition; that was my opinion."

"It is my opinion that this is possibly due to pressure on the nerve in the lower spine, due to irritation from a disc * *"

"I felt that irritation of the nerve may very well be from this disc pressing against the nerve; as I brought out, that irritation, possibly the disc, has removed sufficiently the pressure, and it has been improved."

In addition to the above, the doctor related that although he could go no further than to say that it was possible that the condition resulted from the accident, all of the symptoms he observed were consistent with the existence of an injured disc.

In arguing that because of the lack of certainty of the doctor's testimony, it was entitled to have given its request No. 12 above referred to, advising the jury that they should not consider the plaintiff's claim that he had a disc injury, reliance is placed upon the case of Chief Consol. Min. Co. v. Salisbury cited in the main opinion.[1] It is to be noted that in the Salisbury case the plaintiff's action depended entirely upon the doctor's testimony that the accident "might have" or "could have" accelerated the heart condition. The instant case is significantly different. The plaintiff's evidence not only made out a jury question both as to defendant's negligence and his injury proximately resulting therefrom, but independent of the evidence of Dr. Clegg, there was evidence from which the jury could reasonably find a substantial injury to plaintiff's back and continuing disability resulting therefrom. Such evidence was that while he was helping to load the wheel weighing 400 to 500 pounds on the Huff loader, it fell upon him; that he immediately felt pain in his back, which has continued; that he could not sleep very well; that his legs and feet would get numb; that it has been hard for him to get his legs going in the mornings; that he has continued to suffer pain and distress and that it has limited him in his work and activities since.

Defendant's insistence that the jury should have been told that they must not

1. 61 Utah 66, 210 P. 929.

consider any claim of injury to an intervertebral disc poses this question: does the fact that a doctor who examined him and was called to testify concerning injury to his back, and who used the technical term intervertebral disc in describing his findings, was unable to be positive as to his diagnosis, render it imperative that the court tell the jury that they must not consider the possibility that plaintiff sustained a disc injury? I think not and that the trial court was patently correct in refusing such request for reasons presently to be stated.

It is necessary to take a practical view of a doctor's testimony. As a scientific man, he is aware that it is difficult to be absolutely sure of any cause and effect. In giving testimony under oath, no matter how plausible or probable a given effect may be from a stated cause, there are almost always other probabilities and possibilities. As aptly stated by Larson:[2]

"The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words, as sometimes happens in respect to medical testimony. A doctor's use of such words as 'might,' 'could,' 'likely,' 'possible' and 'may have,' coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is sufficient to sustain an award. It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is the more tentative and qualified are his statements on the witness stand. He will testify that the sledge-hammer blow on claimant's head might have caused claimant's headache, but hesitates to say positively that this was the only possible cause, and may concede on cross-examination that there could conceivably be other causes. The weight of such testimony, however, should not be too sharply discounted because of the disposition of the highly-trained scientific mind to refrain from unqualified statements or opinions on such matters as causation."

Our Utah cases have recognized this same proposition. The fact that the doctor's testimony was not as positive or helpful to the plaintiff as the latter might have desired, does not preclude the plaintiff from having the matter submitted to the jury. The instant case is comparable to Utah Fuel Co. v. Industrial Commission,[3] where the court stated:

"* * * In this case there is no medical evidence on the question of whether the effect of the blow accelerated the pre-existing condition; the doctors refusing to speculate but the Commission drew the inference that there was a definite connection between the blow and the acceleration

2. Workmen's Compensation Law, p. 322.

3. 102 Utah 26, 126 P.2d 1070, 1072.

of the condition, because apparently the acceleration did begin with that event.

"* * * The physicians testified that the accident could or might have had that effect. We do not think it is necessary for an applicant to procure a doctor who will make a positive statement where it is obvious that no positive statement could be expected. When the event of accident is definite and injures a particular member or part of the body and afterward disability or death occurs and the progression toward disability or death can definitely be ascertained as beginning with the former event because the history of the progression directly involves a worsening of the member or part to which the injury occurred or the evidence involves a connection between the trauma and other affected parts in the history of the progressive worsening, there will be sustaining evidence for an award."

It is submitted that the testimony in the instant case falls within the doctrine just set forth. The jury was entitled to find not only the facts directly supported by the testimony, but also to draw reasonable inferences therefrom. All persons of ordinary intelligence and understanding know that the spine is not a solid bone, but consists of vertebrae separated by a softer material which cushions them. They are also aware that the spinal cord is the main trunk of the nervous system which controls the body and particularly the lower extremities. It is but common sense that in an injury to the back it is more likely that the soft tissues between would be crushed than that the bones themselves would be injured. Therefore, irrespective of the technical terms the doctor used to describe the anatomy, upon the basis of the evidence of the injury to plaintiff's back and the pain and disability resulting therefrom, persons of ordinary intelligence could find that the substance between the vertebrae was injured resulting in the symptoms of pain, numbness and limitation of function described by the plaintiff. Neither the fact that the doctor used the technical term of intervertebral disc to describe the portion of the spinal column, nor his failure to be positive in his diagnosis of an injury thereto can have the effect of destroying plaintiff's testimony and compelling withdrawal of the matter from the consideration of the jury entirely. The fact is that the doctor's testimony is not inconsistent with plaintiff's evidence but could reasonably be regarded as supplementing it. It is significant to note that the doctor stated that although he could go no further than to say it was possible that the condition resulted from the accident, all of the symptoms he observed were consistent with the existence of an injured disc. His testimony as to his examination and findings was both material and competent. This, defendant does not challenge. It seems to me that an instruction as re-

quested by the defendant that the jury was not to consider the claim of injury to the intervertebral disc would have had the effect of depriving the plaintiff not only of the testimony of the doctor that such an injury as described by the plaintiff was possible, and not inconsistent with plaintiff's claim, but would also deprive the plaintiff of his testimony from which an injury of such nature could reasonably be found, and would thus have been error as against the plaintiff.

I do not see how one can escape the conclusion that the testimony of the doctor was entirely competent for the jury to consider, along with the other evidence in the case, as bearing upon the nature and extent of plaintiff's injury. There may have been some justification for the requested instruction if the trial court had at any time made any mention to the jury that the plaintiff claimed an injured intervertebral disc. But a study of the record will indicate that the trial court carefully avoided making any reference to that matter whatsoever. The case was submitted upon the issues of negligence and with respect to the injury the court told the jury only that the plaintiff was suing for damages for "certain personal injuries alleged to have been suffered by him [plaintiff]."

Furthermore, a reading and consideration of the instructions together, as they must be, demonstrates that their actual effect was to advise the jury that they could not find that the plaintiff had suffered an injured disc, if such finding were based solely upon the testimony of the doctor that such injury was only a possibility. They were instructed that the burden was upon the plaintiff to prove his contentions by a preponderance of the evidence; and further, that unless so proved, they should find the facts claimed against him; and that in order to establish a fact by a preponderance of the evidence, it must be by such evidence as, when weighed with that opposed to it, had more convincing force, and from which it results that the greater probability of truth lies therein. This burden, of course, could not be met, as defendant correctly argues, by the doctor's statement that the particular injury was merely "possible." The jury were thus in effect advised that they could not find an injured disc on a mere possibility, but that it must be established from the greater weight of the evidence. We are obliged to indulge the assumption that they followed the instructions as given by the court.

I am likewise of the opinion that no error prejudicial to the defendant was committed in giving Instructions Nos. 12 and 13. It is not even contended that they misstate the law, but only that they are inapplicable to the case. From having reviewed a great many cases brought under F.E.L.A. in this state, this court is aware that these very instructions have been given consistently by our district courts for many years. Yet, this is the first suggestion on the part of the court that such

instructions are improper. This poignantly brings to light the real trouble in this case, which I will advert to later. I need not offer any labored defense of these particular instructions because the main opinion practically concedes that they would not be reversible error in any event. However, I do observe that they are certainly not idle dissertations on principles of law entirely foreign to the issues which were tried, as defendant contends. They state correctly the basis of liability. No. 12 directs the jury not to consider the matter of workmen's compensation with which every person of common sense is now acquainted, and which there may be reasonable apprehension that lay jurors' minds might consider. It should not be regarded as error that the trial court warned them not to do so.

Courts habitually give cautionary instructions as was done in this case. Instruction No. 20 told the jury that the defendant was not an insurer of the safety of its employees. No such issue had been raised and it may be argued that the instruction was unnecessary. However, it is invariably requested by the defendant in such cases, and is usually given. It falls in the same category as the two instructions discussed in the main opinion.

It does no harm as a precaution and does not misstate the law. The same reasoning applies to Instruction No. 13 relating to asumption of risk, the giving of which has been held not to be error.[4] This court expressly so stated in Bruner v. McCarthy[5] in speaking of such an instruction: "Yet this could not be prejudicial to the defendants, * * *." In any event, I doubt that even the most hyper-technical would say that the instructions were reversible error.

It is of the greatest practical importance for the efficient and sensible administration of justice that we give more than lip service to our rules[6] and our judicial pronouncements[7] that technical errors should be disregarded, and that a judgment should not be vacated unless there is error which is substantial and prejudicial, and that a new trial should only be granted when there is a reasonable likelihood that, in the absence of the error, there would be a different result.[8]

It is my opinion that the court has gone to undue lengths in finding prejudicial error in this case, because the verdict and judgment actually offends its sense of justice. It is appreciated that the primary concern of the court in any case is that justice be done. However, we should not

4. Atlantic Coast Line Railroad Co. v. Burkette, 5 Cir., 192 F.2d 941, 943; Curtis v. Atchison T. & S. F. R. Co., 363 Mo. 779, 253 S.W.2d 789, 794.

5. 105 Utah 399, 142 P.2d 649.

6. Utah Rules of Civil Procedure, rule 61.

7. Startin v. Madsen, 120 Utah 631, 237 P. 2d 834; Boyd v. San Pedro, L. A. & S. L. R. Co., 45 Utah 449, 146 P. 282.

8. Uptown Appliance & Radio Co. v. Flint, Utah, 249 P.2d 826; Crellin v. Thomas, Utah, 247 P.2d 264.

permit ourselves to be beguiled into giving more substance to an expression which is so well known in the law as to be classified as a cliché, "that harsh cases make bad law." It seems to me that instead of succumbing to specious pretexts of ingenious counsel to avoid a distasteful result, judicial forthrightness requires recognition that the verdict was so excessive that it must have resulted from passion and prejudice, and the granting of a new trial on that ground.

Mr. Moore was not a skilled artisan. He worked on various jobs as a laborer and had a modest income. There is naturally dispute between the parties concerning the extent of his injury and his activities thereafter. But there are certain incontrovertible things which indicate that whatever the injury to his back amounted to, it could not have been grave. The most favorable testimony he could present from the doctor hired to examine him for the express purpose of testifying at the trial was that his disability would be 5%. On the evening of the alleged injury he asked for a leave of absence to put up his hay; it was granted and he did so; two months later he obtained another leave and went on a pack trip elk hunting; he also engaged in boxing and dancing, and rode horses, and in the following spring entered a calf roping contest. He did heavy manual labor for two other companies, at one of which, the Deardon Lumber Company, movies were taken of him rolling and handling heavy logs with no apparent difficulty. In the latter incident may be found the clue to the excessive verdict. The movies were taken by an agent of the defendant company. There is evidence that he told Moore that he wanted to make a newsreel and thereby procured plaintiff to give an exhibition of strength and agility in the handling of these logs. It seems obvious that the jury regarded this as an unjustifiable deception and awarded the plaintiff a verdict of $35,000, which was every cent he prayed for in the prayer of his complaint. It was diminished one-half for contributory negligence but the actual damages which must be justified is the total amount found of $35,000.

It is well known that the amount prayed for, particularly where there is uncertainty with respect to the extent of injury, and the possible future pain and suffering and disability, is usually somewhat extravagant. I concede that even plaintiff's counsel, with their naturally sympathetic view of the situation and other understandable incentives to justify the verdict, have a difficult time in putting together a set of figures justifying the amount of this judgment. They suggest that if this court deems the judgment excessive that under the authority of Duffy v. Union P. R. Co.,[9] this court could order a remittitur. This may be so under some circumstances, but if the verdict actually appears to have

9.  118 Utah 82, 218 P.2d 1080.

been given as a result of passion and prejudice, that so taints the verdict that it should not stand.[10] I do not disagree with the result reached by the rest of the court that this judgment should be set aside and a new trial ordered, but upon the latter ground, expressly disagreeing with the idea that the trial court committed error with respect to the instructions.

WADE, J., concurs in the opinion of CROCKETT, J.

10. See Wheat v. Denver & R. G. R. Co., Utah, 250 P.2d 932, 935, and cases referred to therein.